



ATTORNEYS AT LAW

Nancy Frankel Pelletier, Esq.

(413) 732-2301 ext. 142
npelletier@robinsondonovan.com

December 22, 2017

**By Electronic Filing and Regular Mail**

United States District Court
Attn: Mary Finn
300 State Street
Springfield, MA 01105

  RE: Thomas C. Hodgkins, et al. v. Osa Flory, et al.
    Civil Action No. 3:17-CV-30173-MGM

Dear Ms. Finn:

  Enclosed for filing in the above matter, please find the original certified record from the Hampden Superior Court in the above matter.

       Very truly yours,

       Nancy Frankel Pelletier

NFP/kmm
Enclosure(s)
cc: Nathan R. Lynch, Esq. (electronic)
  James A.. Snow (mail)
  Keith Harmon Snow (mail)
  Dawn L. White (mail)

618063

# COMMONWEALTH OF MASSACHUSETTS

**Hampshire, ss**                                    **Superior Court**
                                                     **Civil Action No. 17cv174**

## CERTIFICATION

I , Harry Jekanowski, Jr., Clerk of the Superior Court for the County of Hampshire do hereby

certify that the attached is a true copy of the entire file and docket entries.

Thomas C. Hodgkins, et als

VS.

Osa Flory, et als

Witness my hand and the seal of the

Superior Court Department of the Trial

Court this day, December 19, 2017

Harry Jekanowski, Jr.
Clerk/Magistrate



**COMMONWEALTH OF MASSACHUSETTS**
**HAMPSHIRE COUNTY**
**Docket Report**

**1780CV00174 Hodgkins, Thomas C. et al vs. Osa Flory As member of Zoning Board of Appeals et al**

| | | | |
|---|---|---|---|
| **CASE TYPE:** | Administrative Civil Actions | **FILE DATE:** | 11/15/2017 |
| **ACTION CODE:** | E99 | **CASE TRACK:** | X - Accelerated |
| **DESCRIPTION:** | Other Administrative Action | | |
| **CASE DISPOSITION DATE** | 12/19/2017 | **CASE STATUS :** | Closed |
| **CASE DISPOSITION:** | Transferred to another Court | **STATUS DATE :** | 12/19/2017 |
| **CASE JUDGE:** | | **CASE SESSION:** | Civil A |

| LINKED CASE |
|---|

| DCM TRACK | | |
|---|---|---|
| **Tickler Description** | **Due Date** | **Completion Date** |
| Service | 02/13/2018 | 12/19/2017 |
| Judgment | 11/15/2018 | 12/19/2017 |

| PARTIES |
|---|

| | | |
|---|---|---|
| **Plaintiff**<br>Hodgkins, Knowlton J. | Nathan R Lynch<br>Nathan R Lynch PLLC<br>Nathan R Lynch PLLC<br>260 March Hill Rd<br>PO Box 573<br>Walpole, NH 03608<br>Work Phone (603) 756-4700<br>Added Date: 11/15/2017 | **656324** |
| **Plaintiff**<br>Hodgkins, III, Robert C | Nathan R Lynch<br>Nathan R Lynch PLLC<br>Nathan R Lynch PLLC<br>260 March Hill Rd<br>PO Box 573<br>Walpole, NH 03608<br>Work Phone (603) 756-4700<br>Added Date: 11/15/2017 | **656324** |
| **Plaintiff**<br>Hodgkins, Thomas C. | Nathan R Lynch<br>Nathan R Lynch PLLC<br>Nathan R Lynch PLLC<br>260 March Hill Rd<br>PO Box 573<br>Walpole, NH 03608<br>Work Phone (603) 756-4700<br>Added Date: 11/15/2017 | **656324** |



# COMMONWEALTH OF MASSACHUSETTS
## HAMPSHIRE COUNTY
### Docket Report

656324

**Plaintiff**
Hodgkins-Birch, Merry

Nathan R Lynch
Nathan R Lynch PLLC
Nathan R Lynch PLLC
260 March Hill Rd
PO Box 573
Walpole, NH 03608
Work Phone (603) 756-4700
Added Date: 11/15/2017

**Defendant**
Robert Barker As member of Planning Board Town of
Williamsburg

**Defendant**
Marciana Caplis As member of Zoning Board of
Appeals

**Defendant**
Charles Dudek As member of Planning Board Town of
Williamsburg

**Defendant**
Osa Flory As member of Zoning Board of Appeals

**Defendant**
James Locke As member of Planning Board Town of
Williamsburg

**Defendant**
Gerald Mann As member of Zoning Board of Appeals

**Defendant**
Stephen Smith As member of Planning Board Town of
Williamsburg

**Defendant**
Snow, Harmon Keith

**Defendant**
Snow,  James A.

**Defendant**
Stephen Snow As member of Planning Board Town of
Williamsburg

**Defendant**
Town of Williamsburg Planning Board

**Defendant**
Town of Williamsburg Zoning Board of Appeals

**Defendant**
White,  Dawn L

## PARTY CHARGES

| # | Offense Date/ Charge | Code | Town | Disposition | Disposition Date |
|---|---|---|---|---|---|
| | | | | | |

## EVENTS

| Date | Session | Event | Result | Resulting Judge |
|---|---|---|---|---|
| | | | | |

## FINANCIAL SUMMARY

| | Fees/Fines/Costs | Assessed | Paid | Dismissed | Balance |
|---|---|---|---|---|---|
| | Total | 305.00 | 305.00 | 0.00 | 0.00 |

| Deposit Account(s) Summary | Received | Applied | Checks Paid | Balance |
|---|---|---|---|---|
| Total | | | | |



**COMMONWEALTH OF MASSACHUSETTS**
**HAMPSHIRE COUNTY**
**Docket Report**

| INFORMATIONAL DOCKET ENTRIES | | | |
|---|---|---|---|
| **Date** | **Ref** | **Description** | **Judge** |
| 11/15/2017 | | Attorney appearance<br>On this date Nathan R Lynch, Esq. added for Plaintiff Thomas C. Hodgkins | |
| 11/15/2017 | | Attorney appearance<br>On this date Nathan R Lynch, Esq. added for Plaintiff Robert C Hodgkins, III | |
| 11/15/2017 | | Attorney appearance<br>On this date Nathan R Lynch, Esq. added for Plaintiff Merry Hodgkins-Birch | |
| 11/15/2017 | | Attorney appearance<br>On this date Nathan R Lynch, Esq. added for Plaintiff Knowlton J. Hodgkins | |
| 11/15/2017 | | Case assigned to:<br>DCM Track X - Accelerated was added on 11/15/2017 | |
| 11/15/2017 | 1 | Original civil complaint filed. | |
| 11/15/2017 | 2 | Civil action cover sheet filed. | |
| 12/18/2017 | 3 | Service Returned for<br>Defendants Marciana Caplis As member of Zoning Board of Appeals,<br>Dawn L. White, James A. Snow, Charles Dudek, Osa Florey, and Gerald<br>Mann: Service via certified mail; | |
| 12/19/2017 | 4 | Defendant's Notice of intent to file motion notice of removal<br><br>Applies To: Osa Flory As member of Zoning Board of Appeals (Defendant) | |
| 12/19/2017 | 5 | Notice of Removal to the United States District Court filed by<br><br>Nancy Frankel Pelletier.<br><br>Applies To: Osa Flory As member of Zoning Board of Appeals (Defendant)<br><br>et als | |
| 12/19/2017 | | Case transferred to another court. Certified  copy mailed to Atty Frankel Pelletier | |



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### WESTERN DIVISION

CIVIL ACTION NO. _____

3:17-CV-30173-MGM

THOMAS C. HODGKINS, ROBERT C. HODGKINS, III, )
MERRY HODGKINS-BIRCH, AND KNOWLTON J. )
HODGKINS, )
    Plaintiffs )
)
)
vs. )
)
)
OSA FLORY, MARCIANNA CAPLIS, AND )
GERALD MANN, CHARLES DUDEK AS THEY )
CONSTITUTE THE MEMBERS OF THE TOWN OF )
WILLIAMSBURG ZONING BOARD OF APPEALS, )
AND KEITH HARMON SNOW, JAMES A. SNOW, )
DAWN L. WHITE, )
    Defendants )

I hereby certify on 12/13/17 that the foregoing document is true and correct copy of the electronic docket in the captioned case.
☐ electronically filed original filed on 12/12/17
☐ original filed in my office on _____
Robert M. Farrell
Acting Clerk, U.S. District Court
District of Massachusetts
By: _____
Deputy Clerk

## NOTICE OF REMOVAL

    NOW COME the Defendants, Osa Flory, Marcianna Caplis, Gerald Mann, Charles Dudek,

and the Town of Williamsburg Zoning Board of Appeals, by their attorney, and pursuant to 28

U.S.C. § 1441, *et seq.*, and state as follows:

    1.  The Defendants exercise their rights under the provisions of 28 U.S.C. § 1441, *et seq.*,

        to remove this action from the Superior Court of the Department of the Trial Court,

        Commonwealth of Massachusetts, Hampshire County, in which this case is now

        pending under the name and style: *Thomas c. Hodgkins, Robert C. Hodgkins, III,*

        *Mery Hodgkins-Birch and Knowlton J. Hodgkins v. Osa Flory, Marcianna Caplis,*

        *and Gerald Mann, Charles Dudek as they constitute the Members of the Town of*

        *Williamsburg Zoning Board of Appeals, and Keith Harmon Snow, James A. Snow,*

        *Dawn L. White,* Docket No. 17CV00174.

DEC 19 2017

617740

2. This is an action in which the District Courts of the United States have been given original jurisdiction in that it arises under the laws of the United States as provided in 28 U.S.C. § 1331.

3. Specifically, the Plaintiffs, allege violations of their rights pursuant to the First and Second Amendments to the United States Constitution.

4. This action was filed on or about November 15, 2017. The complaint was served by certified mail to Defendant Town of Williamsburg on November 21, 2017. In accordance with the requirements of 28 U.S.C. § 1446, this Notice of Removal is filed within thirty (30) days after the receipt of the complaint upon the aforementioned Defendant.

5. Pursuant to 28 U.S.C. § 1446, the Defendants are filing contemporaneously with this Notice of Removal copies of the following served upon it in this action (attached hereto as Exhibits A and Exhibit B respectively):

   (a) Copy of the Certified Mail Envelope

   (b) Complaint; and

6. Based on the foregoing, the Defendants respectfully request that this action be removed from the Superior Court, Department of the Trial Court of Massachusetts, Commonwealth of Massachusetts, Hampshire County, to the United States District Court for the District of Massachusetts, Western Division, the District and Division where the action is pending.

7. Written notice of the filing of this Notice will be given to the adverse parties.

8. A copy of this petition will be filed with the clerk of the Superior Court Department, Hampshire County.

9. All Defendants properly served to date assent to the removal.

617740

WHEREFORE, the Defendants respectfully request that this action be removed to this Court and that this Court accept jurisdiction of this action and that this action be placed on the docket of this Court for further proceedings, as though this action had originally been instituted in this Court.

THE DEFENDANTS
OSA FLORY, MARCIANNA CAPLIS, AND
GERALD MANN, CHARLES DUDEK AND
THE TOWN OF WILLIAMSBURG ZONING
BOARD OF APPEALS,

Dated: December 12, 2017

By___/s/ Nancy Frankel Pelletier___
Nancy Frankel Pelletier, Esq., BBO # 544402
    Direct Fax (413) 452-0342
    npelletier@robinsondonovan.com
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301

617740

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 12th day of December, 2017.

Nathan R. Lynch, Esq.
Nathan R. Lynch, PLLC
260 March Hill Road
P.O. Box 573
Walpole, NH 03608

James A. Snow
49 Silver Lake Drive
Agawam, MA 01001

Keith Harmon Snow
6 Hyde Hill
Williamsburg, MA 01096

Dawn L. White
16 Estes Road
Hancock, MA 01237

*/s/ Nancy Frankel Pelletier*
Nancy Frankel Pelletier, Esq.

617740



U.S. POSTAGE
PAID
WALPOLE, NH
03608
NOV 08 2017
$8.97
R2308K133605-10

1000    01059

USPS CERTIFIED MAIL

7017 0660 0000 2250 8091

NATHAN R. LYNCH PLLC
Attorney at Law
40 Main Street
P.O. Box 573
Walpole, NH 03608

Brenda Lessard – Secretary
P.O. Box 447
Haydenville, MA 01039

*4*

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT

HAMPSHIRE, SS.                                    SUPERIOR COURT
                                     CIVIL ACTION NO. 17CV00174


THOMAS C. HODGKINS, ROBERT C. HODGKINS, III, )
MERRY HODGKINS-BIRCH, AND KNOWLTON J.          )
HODGKINS,                                       )
         Plaintiffs                             )
                                                )
vs.                                             )
                                                )
OSA FLORY, MARCIANNA CAPLIS, AND               )
GERALD MANN, CHARLES DUDEK AS THEY             )
CONSTITUTE THE MEMBERS OF THE TOWN OF          )
WILLIAMSBURG ZONING BOARD OF APPEALS,          )
AND KEITH HARMON SNOW, JAMES A. SNOW,          )
DAWN L. WHITE,                                  )
         Defendants                             )


**NOTICE OF FILING OF NOTICE OF REMOVAL WITH THE**
**UNITED STATES DISTRICT COURT**

NOW COME the defendants, Osa Flory, Marcianna Caplis, Gerald Mann, Charles Dudek,

and the Town of Williamsburg Zoning Board of Appeals and hereby gives notice of their filing

with the United States District Court, District of Massachusetts, Western Division, of their

Notice of Removal.  Copies of the Notice of Removal and Notice of Electronic Filing are

attached hereto as Exhibit A.

DEC 1 9 2017

610540

THE DEFENDANTS
OSA FLORY, MARCIANNA CAPLIS, AND
GERALD MANN, CHARLES DUDEK AND
THE TOWN OF WILLIAMSBURG ZONING
BOARD OF APPEALS,

Dated: December 15, 2017

By _Nancy Frankel Pelletier_

Nancy Frankel Pelletier, Esq., BBO # 544402
  Direct Fax (413) 452-0342
  npelletier@robinsondonovan.com
David S. Lawless, Esq., BBO # 664754
Direct Fax (413) 452-0370
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301


## CERTIFICATE OF SERVICE

I, Nancy Frankel Pelletier, Esq., hereby certify that on this 15th day of December 2017, I served a copy of the above upon the parties in the action by mailing, postage prepaid, to:

Nathan R. Lynch, Esq.
Nathan R. Lynch, PLLC
260 March Hill Road
P.O. Box 573
Walpole, NH 03608

Keith Harmon Snow
6 Hyde Hill
Williamsburg, MA 01096

James A. Snow
49 Silver Lake Drive
Agawam, MA 01001

Dawn L. White
16 Estes Road
Hancock, MA 01237

Subscribed under the penalties of perjury.

_Nancy Frankel Pelletier_
Nancy Frankel Pelletier

3

17 174

COMMONWEALTH OF MASSACHUSETTS

HAMPSHIRE, SS.

SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT CIVIL
ACTION  NO. 17  CV 00174

Thomas C. Hodgkins, Robert C.
Hodgkins III, Merry Hodgkins-
Birch and Knowlton J. Hodgkins,
      Plaintiffs

v.

Charles Dudek, Gerald Mann, Osa Flory,
and Marciana Caplis, as they constitute
the   Members   of   the   Town   of
Williamsburg Zoning Board of Appeals,
Keith Harmon Snow, James A. Snow,
Dawn L. White.

      Defendants

**AFFIDAVIT OF SERVICE**



I, Nathan R. Lynch, Esq. on personal knowledge, depose and say:

1.    I am an attorney licensed to practice in the Commonwealth of Massachusetts.

2.    I am the member of Nathan R. Lynch, PLLC.

3.    I am the attorney of record for the Plaintiffs in the above- entitled matter.

4.    I have personally handled the service of documents related to this case.

5.    On November 29, 2017, on behalf of the Plaintiffs, I served the Defendant, Zoning Board of Appeals for the Town of Williamsburg, Massachusetts with the Complaint in this matter by mailing copies of same, Certified Mail, Return Receipt Requested , Certificate No. 7017-0660-0000-2250-8091.

6.    That the Complaint was served upon the Defendant, Zoning Board of Appeals for the Town of Williamsburg , Massachusetts as evidenced by the copy of the Return Receipt card which is attached hereto as <u>Exhibit 1</u>.

7.    On November 19, 2017, on behalf of the Plaintiffs, I served the Defendant, Brenda Lessard with the Complaint in this matter by mailing copies of same, Certified Mail, Return Receipt Requested, Certificate No. 7017-0660-0000-2250-8091.

8.    That the Complaint was served upon the Defendant, Brenda Lessard as evidenced by the copy of the Return Receipt card which is attached hereto as <u>Exhibit 1</u>.

1

9.   On November 19, 2017, on behalf of the Plaintiffs, I served the Defendant, Charles Dudek with the Complaint in this matter by mailing copies of same, Certified Mail, Return Receipt Requested, Certificate No. 7017-0660-0000-2250-8138.

10.   That the Complaint was served upon the Defendant, Charles Dudek as evidenced by the copy of the Return Receipt card which is attached hereto as Exhibit 1.

11.   On November 19, 2017, on behalf of the Plaintiffs, served the Defendant, Gerald Mann with the Complaint in this matter by mailing copies of same, Certified Mail, Return Receipt Requested, Certificate No. 7017-0660-0000-2250-8121

12.   That the Complaint was served upon the Defendant, Gerald Mann as evidenced by the copy of the Return Receipt card which is attached hereto as Exhibit 1.

13.   On November 19, 2017 , on behalf of the Plaintiffs, I served the Defendant, Osa Flory with the Complaint in this matter by mailing copies of same, Certified Mail, Return Receipt Requested, Certificate No. 7017-0660-0000-2250-8107.

14.   That the Complaint was served upon the Defendant, Osa Flory as evidenced by the copy of the Return Receipt card which is attached hereto as Exhibit 1.

15.   On November 19, 2017, on behalf of the Plaintiffs, I served the Defendant, Marciana Caplis with the Complaint in this matter by mailing copies of same, Certified Mail, Return Receipt Requested, Certificate No. 7017-0660-0000-2250-8114

16.   That the Complaint was served upon the Defendant, Marciana Caplis as evidenced by the copy of the Return Receipt card which is attached hereto as Exhibit 1.

17.   On November 19, 2017, on behalf of Plaintiffs, I served the Defendant, James Snow, with the Complaint in this matter by mailing copies of same, Certified Mail, Return Receipt Requested, Certificate No. 7017-0660-0000-2250-8152

18.   That the Complaint was served upon the Defendant, James Snow as evidenced by the copy of the Return Receipt card which is attached hereto as Exhibit 1.

19.   On November 19, 2017, on behalf of Plaintiffs, I served the Defendant, Dawn L. White, with the Complaint in this matter by mailing copies of same, Certified Mail, Return Receipt Requested, Certificate No. 7017-0660-0000-2250-8169

20.   That the Complaint was served upon the Defendant, Dawn White as evidenced by the copy of the Return Receipt card which is attached hereto as Exhibit 1.

21.   On November 19, 2017, on behalf of Plaintiffs, I served the Defendant, Keith Harmon Snow, with the Complaint in this matter by mailing copies of same, Certified Mail, Return Receipt Requested,

22.   I have not received the Certified Receipt showing Keith Harmon Snow has been served at this time. Nor have I received back the green card showing service was attempted.

23.   I, Nathan R. Lynch, hand delivered a copy of the Complaint to the office of Brenda Lessard on

November 15, 2017.


Signed under the pains and penalties of perjury, this 13th day of  December 2017..

Nathan R. Lynch, Esq.

Exhibit 1

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MarciaNN Carlis
PO BOX 477
Haydenville Ma 01039

9590 9402 2861 7069 2532 98

2. Article Number (Transfer from service label)

7017 0660 0000 2250 8114

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ...red Mail
☐ ...red Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Dawn L. White
16 River Rd
Hancock Ma 01237

9590 9402 2861 7069 2533 11

2. Article Number (Transfer from service label)

7017 0660 0000 2250 8169

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Dawn L White
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ...sured Mail
☐ ...sured Mail Restricted Deli... (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™

PS Form 3811, July 2015 PSN 7530-02-000-9053

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

James Snow
49 Silver Lake Dr
Agawam, MA 01001

9590 9402 2861 7069 2533 80

2. Article Number (Transfer from service label)

7017 0660 0000 2250 8152

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X James Snow
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
11-25-17

NOV 25 2017

USP

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Charlie Dudek
PO Box 447
Haydenville MA
01039

9590 9402 2861 7069 2533 66

2. Article Number (Transfer from service label)

7017 0660 0000 2250 8138

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

OSA Flory
PO Box 447
Haydenville MA
01039

9590 9402 2861 7069 2533 35

2. Article Number (Transfer from service label)

7017 0660 0000 2250 8107

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Brenda Lessard
PO Box 447
Haydenville MA 01039

9590 9402 2861 7069 2533 28

2. Article Number (Transfer from service label)

7017 0660 0000 2250 8091

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

[illegible]
PO Box 447
Haydenville MA
01039

9590 9402 2861 7069 2533 59

2. Article Number (Transfer from service label)

7017 0660 0000 2250 8121

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

# CIVIL ACTION COVER SHEET

**DOCKET NUMBER**
17 174

**Trial Court of Massachusetts
The Superior Court**

**PLAINTIFF(S):** Thomas C. Hodgkins et al.

**ADDRESS:** 12 South Street PO Box 626

Williamsburg, MA 03608

**COUNTY**
Hampshire ☒

**DEFENDANT(S):** Brenda L. Lessard, et al

Keith Harmon Snow, James A. Snow, Dawn L. White

**ATTORNEY:** Nathan R. Lynch, Esq. Nathan R. Lynch PLLC

**ADDRESS:** 260 March Hill Road PO Box 573

Walpole, NH 03608

**BBO:** 656324

**ADDRESS:** Brendal L. Lessard et al141 Main Street PO Box 447 Hayedenville, MA

Keith Harmon Snow, 6 Hyde Hill Road, Williamsburg, MA 01096

James A. Snow, 49 Silver Lake Drive, Agawam, MA 01001.

Dawn L. White, 16 Estes Road, Hancock, MA 01237

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| D13/E99 | Laws Chapter 40A Sections 8, 15, 17 | A | ☐ YES    ☒ NO |

**\*If "Other" please describe:**

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages.  For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses ................................................. $ _____
    2. Total doctor expenses .................................................. $ _____
    3. Total chiropractic expenses ........................................ $ _____
    4. Total physical therapy expenses ................................ $ _____
    5. Total other expenses (describe below) ..................... $ _____     **Subtotal (A):** $ _____
B. Documented lost wages and compensation to date ................. $ _____
C. Documented property damages to dated .............................. $ _____
D. Reasonably anticipated future medical and hospital expenses .... $ _____
E. Reasonably anticipated lost wages ..................................... $ _____
F. Other documented items of damages (describe below) ............ $ _____

SUPERIOR COURT

NOV 1 5 2017

ANDMARC
SEAN M. MAGISTRATE

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

**TOTAL (A-F):$**

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

**TOTAL:** $ _____

**Signature of Attorney/Pro Se Plaintiff: X** _[signature]_

**Date:** 11/15/17

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

Violation of open meeting law, civil conspiracy

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record: X** _[signature]_

**Date:** 11/15/17

COMMONWEALTH OF MASSACHUSETTS

HAMPSHIRE, SS.

17 174

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT CNIL
ACTION  NO. C.A.

Thomas C. Hodgkins, Robert C.
Hodgkins III, Merry Hodgkins-Birch
and Knowlton J. Hodgkins,
            Plaintiffs

v.

**APPEAL UNDER CHAPTER 40A**
**§§ 8,15,17**

Osa Flory, Marcianna Caplis, and Gerald
Mann, Charles Dudek as they constitute the
Members of the Town of Williamsburg
Zoning Board of Appeals,
and

Keith Harmon  Snow, James A. Snow
Dawn L. White original appellants

            Defendants



HAMP...
NOV 1 5 2017
CLERK/MAGISTRATE

**COMPLAINT**

**Pursuant to Remand Order in Docket 1580CV00265**

**FACTS**

1.   Thomas C. Hodgkins is a natural person with a residential mailing address of
     PO Box 626, Williamsburg, Massachusetts and a physical address of 12 South
     Street, Williamsburg, MA 01096.

2.   Robert C. Hodgkins, III is a natural person with a residential address of 1041
     Route 63, Spofford, NH 03462.

1

3. Merry Hodgkins Birch is a natural person with a residential mailing address of PO Box 1003, Jacksonville, Vermont 05342 and a physical address of 771 Hill Road, Whittingham, VT 05361.

4. Knowlton J. Hodgkins is a natural person with a residential address of 32 Aldrich Street, Northfield, MA 01360.

5. The subject property and shooting range is located at 74 Village Hill Road, Williamsburg, Massachusetts.

6. Subject property is a 100+ acre tract of undeveloped land in the Village Residential Zone. Parcel extends into the rural zone and is surrounded by residential homes.

7. The actual shooting range only takes place on a 9 acre piece of the Hodgkins Family land and that piece of land is not in the current use program.

8. The 74 Village Hill Road property has been used for target shooting by the Hodgkins Family as owners since the land was acquired by Robert & Margaret Hodgkins in 1936. Other users of the land for shooting have been, friends, police and National Guards for many years, predating the existing Zoning Bylaws.

9. In September of 2011 an appeal was filed by Erica Verillo based on the Building Inspector's refusal to enforce a complaint relating to the shooting activity on the property.

10. Erica Verillo prevailed in her appeal against the Hodgkins Family and the Zoning Board of Appeals 2011 Decision will hereinafter be referred to as the 2011 Verillo Decision. A certified copy of the 2011 Verillo Decision is attached as Exhibit A.

11. Erica Verillo is now moot to the 2011 Verillo Decision because upon information and belief she has moved to California.

12. The subject of this appeal is the August 15, 2015 appeal of Keith Harmon Snow, David A. Snow and Dawn L. White. This appeal for simplification purposes will be hereinafter referred to the 2015 Snow and White Appeal. The Decision from the 2015 Snow and White Appeal is attached as Exhibit B.

13. Upon information and belief David A. Snow have moved away from Williamsburg and if true are moot to this matter.

14. By Order of Judge A. Richard Carey the 2015 Decision of the Williamsburg Zoning Board of Appeals, the 2015 Snow and White Appeal, was remanded back to the Town of Williamsburg and by Court Order the October 27, 2017 Decision is now the Decision which is being appealed from. Hereinafter the new Decision will be referred to as the 2017 Remand Decision. A certified copy of the 2017 Remanded Decision is attached as Exhibit C.

15. The Building Inspector upon investigation in 2011 concluded that the non-commercial, recreational use of the land as a shooting range did not violate the Zoning Bylaw. This conclusion is contained in the 2011 Verillo Decision.

16. The Zoning Board of Appeals issued a written decision in the 2011 Verillo Decision which directed the Building Inspector to issue a cease and desist order directed to the owners of the subject property mandating; (1) the shooting must return to the pre-2003 patters of usage; (2) use of automatic weapons shall return to pre-2003 levels; (3) no organized shooting groups will have access to the property; (4) testing of firearms and instructing or training in the use of automatic weapons is prohibited; and (5) commercial activity, and activity related to commercial interests, such as weapon dealers, is prohibited. See Exhibit A

17. Each of the above named individuals or entities is a party in interest as that term is used in M.G.L. c 40A § 11.

18. Each of the above named individuals or entities is person aggrieved as that term is used in M.G.L. c. 40A §§ 8, 17.

19. The Defendant, Town of Williamsburg, Massachusetts ("Williamsburg") Zoning Board of Appeals ("ZBA"), is a municipal board organized pursuant to Mass Gen Laws c. 41 § 8IA.

20. The Defendant Town of Williamsburg, Massachusetts Planning Board ("Planning Board") is a municipal board organized pursuant to Mass Gen Laws c. 41   § 8IA.

21. The Defendant, Gerald Man, is a natural person with a business address of 141 Main Street P.O. Box 447, Haydenville, Massachusetts 01039 and is a member of the ZBA for the Town of Williamsburg, Massachusetts and is named solely in that capacity.

3

22. The Defendant, Osa Flory, is a natural person with a business address of 141 Main Street, P.O. Box 447, Haydenville, Massachusetts 01039 and is a member of the Zoning Board of Appeals for the Town of Williamsburg, Massachusetts and is named solely in that capacity.

23. The Defendant, Marciana Caplis, is a natural person with a business address of 141 Main Street, P.O. Box 447, Haydenville, Massachusetts 01039 and is a member of the ZBA for the Town of Williamsburg, Massachusetts and is named solely in that capacity.

24. The Defendant, James Locke, is a natural person with a business address of 141 Main Street, P.O. Box 447, Haydenville, Massachusetts 01039 and is a member of the Planning Board for the Town of Williamsburg, Massachusetts and is named solely in that capacity.

25. The Defendant, Robert Barker, is a natural person with a business address of 141 Main Street, P.O. Box 447, Haydenville, Massachusetts 01039 and is a member of the Planning Board for the Town of Williamsburg, Massachusetts and is named solely in that capacity.

26. The Defendant, Stephen Smith, is a natural person with a business address of 141 Main Street, P.O. Box 447, Haydenville, Massachusetts 01039 and is a member of the Planning Board for the Town of Williamsburg, Massachusetts and is named solely in that capacity.

27. The Defendant, Charles Dudek, is a natural person with a business address of 141 Main Street, P.O. Box 447, Haydenville, Massachusetts 01039 and is a member of the Planning Board for the Town of Williamsburg, Massachusetts and is named solely in that capacity.

28. The Defendant, Stephen Snow, is a natural person with a business address of 141 Main Street, P.O. Box 447, Haydenville, Massachusetts 01039 and is a member of the Planning Board for the Town of Williamsburg, Massachusetts and is named solely in that capacity.

29. The Defendant, Keith Harmon Snow is a natural person with an address of 6 Hyde Hill Road, Williamsburg, MA 01096.

30. The Defendant, James A. Snow is a natural person with a business address of 49 Silver Lake Drive, Agawam, MA 01001.

31. The Defendant, Dawn L. White is a natural person with an address 16 Estes Road, Hancock, MA.

32. On or about August 15, 2015 Keith Harmon Snow James A. Snow and Deborah L. White filed an appeal to the Williamsburg Zoning Board of Appeals (ZBA) that the Building Commissioner for Williamsburg had failed to act pursuant to their request to enforce alleged zoning violations relating to the  Property under the 2011 Verillo Decision. See Exhibit B

33. On November 5, 2015 the Zoning Board of Appeals held a meeting and it rendered a decision directing the Building Commissioner to issue and enforce a cease and desist order against the Property. ("ZBA Decision) See Exhibit B

34. The 2015 Snow and White ZBA Decision was filed with the Clerk for Williamsburg ("Clerk") on December 9, 2015. The 2017 Remanded Decision is now by Court order the document the Plaintiffs are currently Appealing in this Amended Complaint.  A copy of the Order on Remand is attached as Exhibit D.

35. Keith Harmon Snow, James A. Snow and Dawn L. White are being added to this Amended Complain.  Judge Richard A Carey ruled that Keith Harmon Snow, Robert A. Snow and Dawn L. White are indispensable parties and the Court Order on Remand gives the plaintiffs leave of Court to amend.

36. The Plaintiffs were not satisfied with the 2017 Remanded Decision. The language of the Order on remand states the Plaintiffs may file a New Complaint.

## COUNT ONE

### Appeal Pursuant to Mass. Gen. Laws. c. 40A § 17
### (As to the Actions of the Zoning Board of Appeals)
### Federal and State Preemption of Gun Laws and Regulations

37. The Plaintiffs hereby specifically re-allege and incorporate by reference all of the foregoing paragraphs as set forth in the Plaintiffs' Complaint and makes them a part hereof.

38. The Federal and State Government have a comprehensive scheme for Gun Regulation. The Federal Government has Statues on all aspects of gun ownership and it has the Bureau of Alcohol, Tobacco and explosives to enforce the laws and regulations.  Massachusetts regulates guns and shooting quite heavily through the legislature, the Attorney General and the Massachusetts State Police. The Town of Williamsburg is without authority to regulate guns and shooting when either the Federal Government has spoken in this area either by law, regulation or action.

39.   While the Hodgkins Family made a procedural and tactical mistake in not appealing the 2011 Verillo Decision the 2011 Verillo Decision is null and void for two reasons. 1. Gerald Mann and the Board acted Ultra Virus in their 2011 Verillo Decision. Reflected in the minutes of February 7, 2011 is clear language by Gerald Mann stating "Mr. Mann disagreed with Mr. Mahoney's interpretation of Chapter 214, Section 7B. He felt that the legislature gave sweeping immunity of noise levels to shooting ranges under the provision," Thus, not only did Mr. Mann and the Board exceed its authority Mr. Mann knew he exceeded his authority. 2. The Board Lacked Subject Matter Jurisdiction over the issues contained in its 2011 Verillo Decision and Lack of Subject Matter Jurisdiction can be raised at this late date. Subject Matter Jurisdiction is lacking in both the 2015 Snow and White Decision must fail for Lack of Subject Matter Jurisdiction as well as the 2017 Remand Decision for the same reasons.

40.   The procedural process used by the Planning Board was procedurally flawed, did not comport with the Massachusetts General Laws or Federal Laws and therefore did not afford Hodgkins Family the opportunity for a full and fair hearing.

41.   The 2015 Snow and White as well as the 2017 Remand Decision of the Zoning Board of Appeals for Williamsburg exceeds its authority, is arbitrary and capricious, and/or rests on legally untenable ground.

42.   Louis Hasbrouck, the Building Commissioner for the Town of Williamsburg admitted in his letter dated August 15, 2015 to Keith Harmon Snow that the Town of Williamsburg gave no guidance as to what the shooting level at the property was in 2003, what the pre-2003 use of automatic weapons was ok.

43.   The 2017 Remanded Decision attempts to give additional guidance, but it too is arbitrary and capricious. The 2017 Remanded Decision is even stricter than the 2015 Snow and White Appeal that it replaced and is even more arbitrary, capricious and vague.

44.   Prior to the 2003 Zoning Regulations the Hodgkins Family shot all lawful guns on their property anytime of their choosing. There were no restriction as to the type of guns they could shoot, no restrictions as to the duration of shooting and there only limitations were those set by the State of Massachusetts and the United States Government.

45.   There were no Zoning Laws in Williamsburg from the time the family first starting shooting on their range until the Zoning was enacted in 2003. Thus for almost seventy years the Hodgkins Family gun rights and shooting rights vested on their shooting range and land.

46.    The Decision of the Planning Board for Williamsburg exceeds its authority, is arbitrary and capricious, and/or rests on legally untenable ground because inherent in the 2nd amendment right to bear arms in the Bill of Rights contained in the U.S. Constitution is the right to practice and train to so as to become proficient and safe with the arms. The Board exceeds its authority under this paragraph as well under Massachusetts Declaration of Rights.

47.    The 2017 Remanded Decision states the 2011 Decision and the 2015 Decision remain in place with the exceptions of the conditions contained in those prior decisions which are modified below. In reality the modifications in the 2017 Remanded Decision are a repeal of the 2011 Decision and they will be listed and compared below.

   (1)  In the 2011 language "The shooting range will return to pre-November 2003 patterns of usage and scale.

   (2)  The 2017 Remanded Decision states "Shooting on the property will return to pre-November 2003 patterns of usage and scale which limit the shooting on the property to the following: a. Shooting may occur only one afternoon per week, on Wednesday, between the hours of 11:00 AM and 4PM.. b. Shooting may occur on Sundays between the hours of 11:00 AM and 4:00 PM. c. Shooting may occur on the property on July 4th.

   (3)  Special Condition One of the 2017 Remanded Decision attempts to clear up the arbitrary and vague and capricious language, but in fact it is now even far worse. Prior to 2003 the Hodgkins Family shot on their property when they wanted and with the frequency of their own choosing. The special condition must fail because on its face it is not consistent with pre-2003

        patterns and scale of usage. The ZBA has picked specific days and times that shooting is allowed. Prior to 2003 the Hodgkins were not subject to such arbitrary and tight controls. Further, the State of Massachusetts has spoken as to what times shooting is allowed and the State Statute Preempts the time provision in the 2017 Remanded Decision. Special Condition 1. Must fail on Constitutional grounds.

   (4)  In Paragraph 2 of the 2017 Remanded Decision the Plaintiffs are precluded from "No organized shooting groups of a commercial nature. This language is vague and must fail. No definition of what this paragraph suggests is given and the Hodgkins Family is without knowledge as how to comply with this paragraph. The Williamsburg Police Department use to qualify on this range as did other departments and such activities is consistent with pre-2003 levels.

(5) In the 2011 Verillo Decision the Hodgkins property is referred to as a "Shooting Range" The 2017 Remanded Decision refers to the shooting range as the "Property". The Town is being blatantly dishonest in the 2017 Remanded Decision. The 2011 minutes clearly discuss the property as a "shooting range" and the protections afforded it by Mass General Laws 214 Section 7B. The Towns current position to deny the existence of a "shooting range" is arbitrary and capricious. Massachusetts has not clearly defined what a shooting range is, but since 1936 the Hoddgkins Family has a berm or backstop at one end where they set up targets and benches chairs and tables at the other end where they shoot their guns at target. Black's Law Dictionary does not define the word shooting range, but the Oxford Dictionary defines a shooting range as "an area provided with targets for the controlled practice of shooting"

48. The Defendant's should be estopped from asserting the "Shooting Range" is not a shooting range after they asserted it was a shooting range in their 2011 Decision.

49. In the 2017 Remanded Decision it states "In addition, there was testimony at the October 3, 2017 public hearing that prior to November 2003, there was no automatic gun fire on the property and there was no rapid firing of weapons that sounded as if guns were being fired were automatic weapons" The Town is either being dishonest or it forgot that in the Verillo Decision it stated that "Use of Automatic Weapons shall return to its pre- November 2003 levels. Therefore it appears the 2011 decision requiring the Hodgkins use automatic weapons has been repealed. Paragraph 3 in the 2017 Remanded Decision is null and void because the State and Federal Government Preempts the Boards authority to rule on automatic weapons and other weapons in that paragraph.

50. Paragraph 4 of the 2017 Remanded Decision is null and void under Preemption Law. Massachusetts has a 10 capacity magazine law, but made an exemption for pre-ban magazines manufactured prior to 1994. Thus Massachusetts has spoken on this issue. Further, Williamsburg gave no guidance on how it arrived at 10 and thus the number 10 is arbitrary and capricious.

51. The 2011 Verillo Decision, the 2015 Verillo Decision and the 2017 Verillo Decision all purport to compel the Hodgkins Family to return to pre-2003 levels of shooting. However the 2011 Decision recognized the Hodgkins Family used automatic and semi-automatic weapon and never dictated the magazine capacity or days and times when shooting was allowed.

8

52. The 2015 Snow and White Decision and the 2017 Remanded Decision both dictate times the Hodgkins Family can shoot, but the times are different and the 2017. The 2017 Remanded Decision now dictates what specific days the Hodkins Family Can shoot.

53. The 2017 Remanded Decision has essentially repealed the 2011 Remanded Decision and the Board has now attempted to define what the 2003 level of shooting was in a manner that differs significantly from both the 2011 Verillo Decision and the 2015 Snow and White Decision.

54. The Hodgkins Family assert the Williamsburg family has no authority to regulate guns or shooting and Massachusetts General Law 214B Section 78 is controlling on their vested rights to shoot on their range.

WHEREFORE, the Plaintiffs request an entry of judgment by the Court,

a. Annulling the Decision of the Planning Board or alternatively;  and

b. Granting any further relief that this Court deems just and  reasonable.

9.

## COUNT TWO

### APPEAL PURSUANT TO MGL c. 40A §§ 8, 15, 17
### (AS TO THE ACTIONS OF THE ZONING BOARD OF APPEALS)

55. The Plaintiffs hereby specifically re-allege and incorporate by reference all of the foregoing paragraphs as set forth in the Plaintiffs' Complaint and makes them a part hereof.

56. The procedural process used by the ZBA was procedurally flawed, did not comport with the Massachusetts General Laws and therefore did not afford the Hodgkins Family the opportunity for a full and fair hearing.

57. The Decisions of the ZBA exceed its authority, are arbitrary and capricious, and/or rests on legally untenable ground.

58. The speficicity about the time, date, and types of weapons that can be shot is arbitrary and capricious and in no way relate to the vested shooting rights that occurred prior to 2003. None of the requirements in the 2017 Remanded decision were required prior to 2003 and the Hodgkins Family shot all lawful guns whenever they chose to do so.

59. The ZBA in its 2015 Snow and White Decision issued a special condition that shooting take place between the hours of 9:00AM and 6:00PM and that shooting not exceed 4 hours on any given day but it has no statutory authority to make that ruling. Yet in the 2017 Remanded Decision the time has been reduced to 11:00AM and 4:00 PM. Further, the days for shooting have been reduced. Clearly the 2017 Remanded Decision is arbitrary and capricious. In addition, the Board is acting spiteful and it Appears the Hodgkins Family is being punished for exercising their right to appeal.

60. MGL 131 Section 67 is controlling as to when guns can be discharged in Massachusetts and it states as follows: "A person shall not use or possess, where birds or mammals are found, any rifle chambered to take larger than twenty-two long rife ammunition, or any revolver or pistol chambered to take larger than a thirty-eight caliber ammunition between the hours of one half hour after sunset to one half hour before sunrise throughout the year."

61. Shooting on a range is not noise pollution or nuisance under Mass General Law Chapter 214 Section 7B which is also controlling in this case. When the Commonwealth of Massachusetts speaks to an issue by law or regulation the Town of Williamsburg has no authority to regulate in that area under preemption doctrine.

62. The ZBA issued a condition that an owner be present on the land during any shooting, but is has no statutory authority to make such a ruling.

63. The zoning board issued a condition that permanent highly visible signs indicating that shooting may be taking place shall be posted at each entrance to the parcel, but this is fundamentally flawed because shooting only takes place on a 9 acre parcel within the 100 acre lot owned by the Hodgkins family. Further, they have no statutory authority to make that condition.

64. The Zoning Board of Appeals issued a condition that purports to tell the Hodgkins Family what weapons they can shoot. The Hodgkins have the right to shoot any guns authorized by the State or Federal Government

65. MGL c 140 Section 123 is the approved firearms list. The Commonwealth of Massachusetts Executive Office of Public Safety and Security has published on their web site their approved firearms as of 09/2017. The State has ruled on what guns are lawful and the Williamsburg ZBA is without authority to decide what weapons are authorized on the Hodgkins property.

66. Guns are regulated by the Federal Government and the Commonwealth of Massachusetts. When state law conflicts with Federal Law the Federal Law governs by preemption under the Supremacy Clause of the United States.

67. The Town of Williamsburg derives its powers to govern from the Commonwealth of Massachusetts and when State Laws or regulations conflict with town laws the State Law reigns supreme and preempts the town law or ordinance.

68. MGL c 140 Section 121 has ruled it is illegal to possess magazines that hold more than 10 rounds, but that pre-ban magazines manufactured before September 13, 1994 are exempt from this restriction. Therefore State Law preempts the ZBA and Williamsburg has no authority to regulate magazine authority.

69. Many semi-automatic weapons are legal in Massachusetts and therefore semi-automatic weapons are authorized on the Hodgkins property. Williamsburg is pre-empted in all aspects of semi-automatic weapons.

70. Massachusetts Public Policy is to promote "gun safety" Upon information and belief a one day gun safety course is a requirement in order to get a gun license in Massachusetts. Paragraph 5 of the remanded 2015 decision is pre-empted by the public policy of safety. Any experienced or inexperienced gun owner benefits if the owner of the fire arm instructs a new user as to how a gun operates. This is a safety issue that Williamsburg cannot deny an owner.

71. Massachusetts does not prohibit the sale of tannerite or tannerite targets or other forms of explosive targets. The Williamsburg ZBA is without authority to regulate in this manner.

72. The Town of Williamsburg issued a condition that the Hodgkins family must "put up red flags and a red sign" this condition is arbitrary and capricious and the Town is without statutory authority to impose this condition.

73. In paragraph 5 of the remanded 2017 Decision the ZBA makes a condition that no testing or instruction take place on the property. All shooting is testing and instructing. Practice makes perfect and public policy dictates that if instruction is given the range will be a safer place. Paragraph 5 is null and void because it violates public police and is arbitrary and capricious.

74. The Plaintiffs understand the Town can regulate commerce or require commercial permits, but finds the 2017 Remanded Decision is vague.

75. Paragraph 7 of the 2017 Decision is null and void. Tannerite is legal in Massachusetts and is sometimes used on target. The State and Federal Government preempts explosive devices and Williamsburg is without authority to regulate.

76. Paragraph 8 requires an owner be present when shooting takes place. The Federal Government and the State Government do not require this. The town has no statutory authority to impose this condition. The Plaintiffs as the property owners have the right to impose this requirement, but the town does not.

77. Paragraph 9 imposes the duty to call the Chief of Police prior to shooting. Neither Massachusetts nor the Federal Government requires this condition and Federal and State Government preempts the town and the town is without authority to govern in this matter.

78. The Hodgkins Family is currently discussing what changes they would like to make to their shooting range. The Hodgkins will consider the conditions in paragraphs 11-14, but the ZBA is without authority to impose such conditions because of State and Federal Preemption of gun laws and regulations. The Board has not sighted its statutory authority nor has it given its reasons for imposing such conditions. Such conditions are arbitrary, capricious.

WHEREFORE, the Plaintiffs request an entry of judgment by the Court.

    a.   Annulling the Decision of the Zoning Board of Appeals;

## COUNT THREE

20017 Remanded Decision is not consistent with
shooting rights which vested prior to 2003a

79. The Plaintiffs hereby specifically re-allege and incorporate by reference all of the foregoing paragraphs as set forth in the Plaintiffs' Complaint and makes them a part hereof.

80. The current use of the Property by the Hodgkins Family and friends does not constitute a substantial and material change of use from 2003 or 2011 or from any period that started from 1936. Nobody on the Board can testify as to what levels of shooting took place prior to 2003 and neither can Keith Harmon Snow, James A. Snow or Dawn L. White.
An actual ad judicable controversy exists as to thy validity of the ZBA's prior unlawful rulings. The town will not be able to furnish evidence as to what levels of shooting took place from 1936 through 2003. The appellants were not even alive in the 1930s and 1940's and so they clearly have no idea how the Hodgkins Family shot prior to 2003.

81. The Hodgkins Family asserts they shot all lawful guns on their shooting range whenever and at whatever time was lawful. They shot guns as a family and individually. What dictated their frequency of shooting was their financial standing from year to year. Their work schedules had a factor in their frequency of shooting as well as certain members' time away from Williamsburg in service to their Country.

82. Setting specific times, and days and duration and types of guns is not consistent with the Hodgkins Family's lawful usage of their shooting range prior to 2003.

83. The Zoning Board of Appeals is acting in an arbitrary, capricious manner. Their ordinance is void for vagueness.

84. The Hodgkin Family asserts the ordinance is an attempt by the Town of Williamsburg to enact Gun Control and that Gun Control when lawful is enacted by the State of Massachusetts and the United States Government.

85. This unlawful ordinance is a failed and unlawful attempt to enact gun control.

86. The 2017 Remanded Decision is null and void because it is an attempt to define pre-2003 vested shooting rights with precision that never existed prior to 2003. Prior to 2003 the Hogkins Family rights to shoot on their range vested and they had the right to shoot any day of the week at lawful times prescribed the State of Massachusetts and they were allowed to shoot all lawful weapons and use all lawful weapon which at the time exceeded 10 rounds. Massachusetts Law allows pre-1994 ban magazines to be utilized in Massachusetts

WHEREFORE the Plaintiffs pray this Honorable Court adjudicate all the Prior ZBA rulings are invalid as to the recreational shooting taking place at the Hodgkins Family Land and shooting range.

## COUNT FOUR

### Due Process Violation
### (As To All Defendant's)

87. The Plaintiffs hereby specifically re-allege and incorporate by reference all of the foregoing paragraphs as set forth in the Plaintiffs' Complaint and makes them a part hereof.

88. Upon information and belief at or near and during the time the Applications were pending before the Planning Board and ZBA certain citizens of Williamsburg and other interested individuals had *ex parte* communications with individual Planning Board ZBA members who were not the chairperson of their respective boards.

89. At the time the *ex parte* contacts were made, the Planning Board and Zoning Boards were was acting as a fact finding and quasi-judicial boards with regard to the Applications.

90. At no time during any public hearing did any member of the Planning Board or Zoning Board acknowledge he or she had been contacted outside a public hearing by any member of the public or other interested party.

91. Upon information and belief, the sole purpose of the *ex parte* contact was to the interested parties' position or otherwise attempt to improperly influence the Planning Board or Zoning Board's decision making   process.

92. The *ex parte* contact materially prejudiced the Hodgkins Family in violation of the Due Process Clauses of the Massachusetts Declaration of Rights and the Constitution of the United States of America.

93. Upon information and belief these ex parte meetings are ongoing.

94. Email evidence and testimony will show that Keith Harmon Snow had a hand in writing the same Decision he successfully appealed. Upon information and belief the outcome of the appeal was decided by Keith Harmon Snow, The Zoning Board of Appeals and others before the actual hearing took place.

WHEREFORE the Plaintiffs pray this Honorable Court adjudicate the Zoning Board of Appeals actions in the 2015 Snow and White Decision and the 2017 Remanded Decision are null and void and unlawful. Declare that:

   a. That such *ex parte* contact deprived the Plaintiffs of their right to a fair hearing in violation of the Due Process Clauses of the Massachusetts Declaration of Rights and United States Constitution : and

   b. Enter an Order annulling the Actions of the Zoning Board of Appeal.

   c. Declare that Keith Harmon Snow's efforts in writing the Decision of his own appeal was an ex parte contact and was contrary to Massachusetts Law.

## COUNT FIVE

**Violation of MGL Chapter 214 Section 7B
Shooting on a range is not noise pollution or nuisance
Massachusetts General Law is Supreme over Town
Ordinance**

14

95.    Massachusetts General Law Chapter 214 Section 7B. states as follows: "Notwithstanding the provisions of any general or special law, rule or regulation to the contrary, no owner of a rifle, pistol, silhouette, skeet, trap, blackpowder, or other similar range shall be liable in any civil action or criminal prosecution in any matter relating to noise or noise pollution resulting from use of the range, provided said owner of the range was in compliance with any applicable noise control law, ordinance or by-laws in existence at the time of the construction of such range. No owner shall be liable in any action for nuisance, and no court shall enjoin the use or operation of said range on the basis of noise or nose pollution, provided said owner was in compliance with any noise control law, ordinance or by-laws in existence at the time of construction of the range. The exemption from liability and the immunities from prosecution provided in this section shall also extend to any owner who, in order to satisfy a requirement of law, regulation or by-law, relocates his range within the same parcel of land or a contiguous parcel of land, owned by him at the time that the Commonwealth or its political subdivision commences enforcement of such requirement or that the owner voluntarily complies with such a requirement. In order to maintain these exemptions from liability and immunities from prosecution, owners who relocate their ranges pursuant to the preceding sentence shall remain in compliance with applicable noise control laws, ordinances, or by-laws in existence at the time of the construction of the original range described in the first paragraph. No standards in rules adopted by any state, city, or town agency for limiting levels of noise in terms of decibel level which may occur in the outdoor atmosphere shall apply to the ranges exempted from liability under the provisions of this section Such ranges shall be prohibited from operating between the hours of ten o'clock post meridian and eight o'clock ante meridian unless otherwise allowed by the local governing body"

96.    The Defendants have admitted the Plaintiffs have been shooting on their family property for "many years" and the Hodgkins Family asserts the family have been active shooters on this property since 1936.

97.    This shooting range has been in existence since 1936 and many years before the Town of Williamsburg enacted any zoning regulations and thus the Hodgkins Family is and always has been in compliance with MGL 214 Section 7B.

98.    Massachusetts General Law Chapter 214 Section 7B Preempts any local ordinance as to noise or nuisance and therefore the Board has no authority to regulate as to when shooting may take place on a range, what level of noise is created by shooting on the range. This statute also states at what times shooting can take place.

99.    The Hodgkins Family asserts that if they are taken to Court in civil or criminal Court they will assert MGL 214 Section 7B and ask for attorney costs and fees for bringing a frivolous suit.

## COUNT SIX

Violation of the 1st and 2nd Amendment and Article 1 and
17 of the Massachusetts Declaration of Rights
**(As To All Defendant's)**

100. The Plaintiffs claim that the constraints placed upon them violate their right to acquire and maintain proficiency in the use of firearms. See Ezel v. City of Chicago, 651 F.3rd 684, 707 (7th Cir. 2011)

101. Plaintiffs further assert such unconstitutional infringements violate their rights to free speech under both the U.S. Constitution and the Massachusetts Constitution.

102. No statutory provisions have been violated by the Hodgkins family or friends and the ZBA has failed to cite any authority for its decision.

103. The Supreme Court recognized the right to keep and bear arms for self-defense under the 2nd Amendment in District of Columbia v. Heller, 554 U.S. 570 (2008) Further, the Supreme Court extended that protection against state and local government infringement through the 14th Amendment. McDonald v. City of Chicago, 561 U.S. 742. 130 S. 570th

104. Plaintiffs recognize that many people do not like guns, are afraid of guns or believe they lead to violence. However, such personal beliefs do not hold up to constitutional rights and are a violation of the Hodgkins Family's right to freedom of speech and freedom of expression and freedom to assemble.

105. The Hodgkins have been deprived their constitutional rights since 2011 and this is a real and substantial taking of Constitutional rights which requires money damages..

## COUNT SEVEN

Violation of the open meeting Laws and conflicts of interest.

106. On July 30, 2014 Keith Harmon Snow sent an email to Charles and Mary Dudek that discusses the shooting problem and it discloses that Keith Snow was organizing a community meeting. Charles Dudek is a Board Member in Williamsburg and this email and community meeting is illegal. James A. Snow aka Jay Snow received the same email as well as Steven Snow and Dawn White. This email mentions Mr. Duval whom the Town went after for similar issues.

16

See attached <u>Exhibit F</u> Mr. Snow should not be contacting Mr. Dudek in this manner.

107. An attached email from Keith Snow to Jack Koczela with dates of September 29, 2015 and September 30, 2015 shows Keith Harmon Snow was involved in writing the Decision that is the Subject of this Appeal. Exhibit ** states "Dear Keith, Henrietta, Bill, Mark and Mary, Attached is version 2 of the findings. I have tried to reflect the edits from Mark and Mary, as well as all of Keith's comments." It further states "I would hope before the end of the day. Need to know if there are any further comments. Thanks, Jack. <u>See attached Exhibit E</u>.

108. The attached <u>Exhibit F</u> shows an email chain between Keith Harmon Snow, Henrietta Wallace and Charles and Mary Dudek. Such communications are a violation of the open meeting law and shows bias towards the Hodkins Family and shows the Zoning Board of Appeals was rigged. <u>See Exhibit F</u>.

## <u>COUNT EIGHT</u>

### Civil or Criminal Conspiracy

109. Keith Harmon Snow, Charles Dudak, James A. Snow, Dawn L. White and others not yet known persons acted in unison to deprive the Hodgkins Family the right to shoot on their gun range.

110. Keith Harmon Snow had a hand in drafting the Decision that arose from his appeal to the Zoning Board of Appeals to curtail shooting on the Hodgkins property.

111. Such actions by Keith Harmon Snow and others was not lawful

112. Such action by Keith Snow and others was done intentionally.

113. The actors in paragraph 97 had the intent to cause the Hodgkins family emotional as well as money damages.

114. The actors in paragraph 97 had email chains and "community meetings" and discussions that discussed the Hodgins Shooting Range and manners and methods to deprive the Plaintiffs of their Constitutional Rights.

WHEREFORE, THE Plaintiffs respectfully request the following relief:

A. Dismiss or overrule the 2017 Remanded Decision of the Zoning Board of Appeals because of lack of Subject Matter Jurisdiction by the Zoning Board of Appeals based on Federal and State preemption laws of gun laws and regulation and shooting ranges.

B. Rule the 2011 Verillo Decision while never appealed is null and void because the Zoning Board of Appeals lacked Subject Matter Jurisdiction based upon Federal and State preemption of gun laws and shooting law.

C. Require all Board Members that colluded with Keith Harmon Snow, David A. Snow and Dawn White be removed from office.

D. Award Money Damages to the Hodgkins Family that is just and fair.

E. Dismiss or overrule the 2017 Remanded Decision case on grounds of Due Process because of the dirty hands of the Zoning Board of appeals and Keith Harmon Snow, David A. Snow and Dawn L. White.

F. Dismiss or overrule the 2017 Remanded Decision on the grounds that the decision is vague, arbitrary and capricious.

G. Overrule or annul the decision of the Zoning Board of Appeals because the Hodgkins Family is shooting on their range in a manner that is consistent with how they have historically shot with the exception of the past few years while litigation has taken place

Respectfully submitted this 15 day of November, 2017.

The Plaintiffs,
By their Attorney,

Nathan R. Lynch
Nathan R. Lynch, PLLC
260 March Hill Road
P.O. Box 573
Walpole, NH 03608
Phone: (603) 756-4700
Fax: (888) 766-5601
nate@walpolelaw.com
BBO# 656324

18

## CERTIFICATE OF SERVICE

I, Nathan R. Lynch, Esq., of Nathan R. Lynch, PLLC hereby certify that service of Process will be completed and proof furnished in the prescribed manner.

Respectfully Submitted,
The Plaintiffs'
By their counsel,

Nathan R. Lynch, Esq.
Nathan R. Lynch PLLC
260 March Hill Road
PO Box 573
Walpole, NH  03608
(603) 756-4700
nate@walpolelaw.com
BBO# 656324

THE COMMONWEALTH OF MASSACHUSETTS

## Town of Williamsburg

## Board of Appeals

Exhibit
A

DECISION

**An appeal from a decision of an Official or Board of the Town.**
The appellant, Erica Verrillo, represented by her attorney, Richard M Evans, appeals the Building Inspector's failure to enforce Section 4.0 of the Williamsburg Zoning Bylaw, which prohibits use of land for any purposes harmful to public health, safety and comfort by reason of noise and other causes. This is an appeal pursuant to Section 13.3 of the Williamsburg Zoning Bylaw and Sections 8 and 15 of Chapter 40A of the Massachusetts General Laws, from the decision of the Building Inspector not to enforce Section 4.0 of the Bylaw as set forth in his decision dated November 8, 2010, regarding 74 Village Hill Road, Map C, Parcels 89 and 90, owned by Thomas C Hodgkins, Williamsburg, MA, Robert C Hodgkins III, Chesterfield, NH, Knowlton James Hodgkins, Deerfield, MA, Merry Hodgkins Beval, Jacksonville, VT. The appellant does not appeal from the determination that commercial use of the premises would require a special permit. Appellant further states that a change, extension, and enlargement of the non-conforming use has occurred.

Date of Application: December 2, 2010
**Date of Hearing:**    January 31, 2011
**Date of Decision:**    February 7, 2011

**Vote by members of the Board:**   Gerald Mann - In Favor
Lisa Berkman - In Favor
Martin Mahoney - In Favor

Findings:

A. General Findings:
On September 8, 2010, Erica Verillo of 6 Nichols Road, Williamsburg, through her attorney Richard M Evans, submitted a request for enforcement of Section 4.0 of the Williamsburg Bylaws which prohibits use of any parcel, tract or lot *"for any purposes harmful to public health, safety or comfort by reason of the emission of odor, fumes, dust, gas, chemicals, poisonous fluids or substances, vibration, noise or other cause of danger."* The tract of land identified in this request for enforcement is 74 Village Hill Road identified as parcels 89 and 90 on Assessors map C.

On November 8, 2010, the Building Inspector, Louis Hasbrouck in his response to the

requested enforcement of Section 4.0 of the Williamsburg Bylaws, responded in part, "I do not consider non-commercial, recreational use of the land as a shooting range a violation of the Williamsburg Zoning Bylaw and I will take no action regarding that activity at this time."

## B. Specific Findings:

74 Village Hill Road is a 100 acre+ parcel of undeveloped land, 1.3 miles from Williamsburg's village center. The parcel lies within the Village residential Zone and extends into the Rural Zone and is abutted by residential structures. There exists a site specific, purpose built, shooting range under the control of the property owners.

In November of 2003, a Zoning Bylaw replaced the former protective bylaw. The Zoning Bylaw created Zoning Districts (Section 2.0) and a Schedule of Uses (Section 3.0). Section 3.0 states "Any use not specifically set forth in this Use Table shall be prohibited, unless otherwise exempt from municipal zoning regulations..." A shooting range is not listed and therefore is prohibited. The use of the property in question is now non-conforming under Section 12.0 of the Zoning Bylaw. Section 12.0,a states "Any lawful use or structure that does not conform to this Bylaw may be continued, but no such non-conforming use or structure shall be changed, extended, or enlarged in any manner, except as provided in Subsections (e) and (f) below."

The public hearing to appeal the Building Inspector's decision was held on January 31,2011, where voluminous testimony was heard about the perceived increase in the number of days a week the shooting range was used( formerly 1-2, now 5-7) and the intensity of gun firings,("sounds like machine guns", "automatic weapons", "some type of cannon", "explosions") Abutters testified to being forced to leave their homes on many afternoons to seek peace and quiet elsewhere. Thirty three community members testified about how distressful living near the shooting range had become. Many were long time residents who contrasted current frequency and intensity with historic activity. We received 37 written submissions by abutters and their families complaining about the increased frequency and intensity of use of the shooting range. Of note, consistently across the hearing testimony and the written submissions, those affected by the shooting activity say that the marked increase has only been problematic for the last four or five years. Three community members addressed the Board stating that the shooting range was a long standing recreational resource and should remain so. The owners of 74 Village Hill Road attended the hearing but did not ask to address the Board.

A YouTube video was played at the hearing, showing an organization named Irish Arms, with a Holyoke, Massachusetts address using automatic weapons on what observers could clearly identify as the shooting range at 74 Village Hill Road. The Irish Arms video advertised weapon sales and training instruction

## C. Applicable law and decision criteria

It has been determined that the use of the property is non-conforming. As a non-

conforming use, Section 12.0,a, of the Williamsburg Bylaw, which states *"Any lawful use or structure that does not conform to this Bylaw may be continued, but no such non-conforming use or structure shall be changed, extended or enlarged in any manner, except as provided in Subsection (e) and (f) below"* is applicable.  The testimony at the public hearing clearly identifies marked changes in the frequency of use and the increased intensity of the shooting sounds issuing from the shooting range. The effects of the increased frequency and intensity have intruded on the ability of the nearby residents to conduct their lives in reasonable tranquility.

In <u>Powers v. Building Inspector of Barnstable</u> (363Mass.648.((1973)) ), the decision of the court determined that to restrict what is perceived as an increased use, change or extension of a non-conforming parcel, one, of three tests have to be met.

*"The first test is whether the present use reflects the nature and use prevailing when the zoning by-law took effect"*
It is the Board's opinion that there is a significant change in the nature and use as a 61b recreational area with a shooting range when the zoning by-law took effect in 2003. The frequent use of large caliber automatic weapons did not occur prior to 2003 nor did use by local and regional organized groups.

*"The second test is whether there is a difference in the quality or character, as well as the degree, of present use."*
The Board finds that the testimony heard, video evidence presented and written submissions, clearly describes a difference in the quality, character and degree of present use . Testimony indicated that the use of the range from 5 to 7 days per week is significantly different than the occasional weekend use in years prior to 2003.

*"The third test is whether the current use is different in kind in its effect on the neighborhood."*
The Board finds that the increased frequency and intensity of sounds generated by the shooting range has made outdoor residential activities stressful for the surrounding residents, frequently driving them indoors or off their property.

Having established that all of the three <u>Powers v. Building Inspector of Barnstable's</u> tests have been met, the Board may impose reasonable restrictions on the current uses of 74 Village Hill Road, namely, to return activity to the pre-2003 level.

Decision of the Board:

The Zoning Board of the Town of Williamsburg directs the Building Inspector in his role as Zoning Enforcement Officer, with the authority granted to him in Section 13.2 of the Williamsburg Bylaw, to issue a cease- and desist order directed to the owners of 74 Village Road, Williamsburg, MA.

The cease-and-desist order shall mandate:
> 1. The shooting range will return to pre November 2003 patterns of usage and scale.

2. Use of automatic weapons shall return to pre November 2003 levels.
3. No organized shooting groups will have access to the shooting range.
4. Use of the shooting range, to test firearms, to instruct or
   train in the use of automatic weapons is prohibited.
5. All commercial activity, including activity related to commercial interests,
   such as gun dealers, is prohibited.

Appeals from this decision, if any, shall be made pursuant to Chapter 40A, Section 17, of the Massachusetts General Laws, and shall be filed within twenty days after the date of filing of the notice of this decision in the Office of the Town Clerk.

Dated this 18th day of February, 2011

Gerald Mann, Chair, on behalf of the Board of Appeals

Received and recorded by the Town Clerk *February 22, 2011*
(date)

Town Clerk, Williamsburg, Massachusetts

"A TRUE COPY ATTEST"

*Brenda Lessard*

4 pages

THE COMMONWEALTH OF MASSACHUSETTS

TOWN OF WILLIAMSBURG

ZONING BOARD OF APPEALS

DECISION

Exhibit B

The applicants, Keith Harmon Snow, James A Snow and Dawn L. White, appeal the Building Inspector's "failure to enforce Section 4.0 of the Williamsburg Zoning Bylaw, and his failure to enforce the ZBA decision (Verillo) of February 7, 2011."

The subject of this appeal is the property known as 74 Village Hill Road in the Town of Williamsburg, owned by Thomas C. Hodgkins, Williamsburg, Mass., Robert C. Hodgkins III, Chesterfield, N.H., Merry Hodgkins Beval, Jacksonville, Vt., Knowlton James Hodgkins, Deerfield, Mass.

Date of Application:        August 15, 20105
Date of Hearing:  November 5, 2015
Date of Decision:  November 19, 2015

Vote by members of the Board:

| Osa Flory: | In favor |
| Marcianna Caplis: | In favor |
| Gerald Mann: | In favor |

Findings:

a. Background:

74 Village Hill Road is a 100+ acre tract of undeveloped land. The parcel is in the Village Residential Zone and extends into the rural zone. The tract is surrounded by residential homes.

The property has been used for target shooting by the owners and friends for many years, predating the existing Zoning Bylaw. An appeal to the ZBA, similar to the present appeal, was filed on September 8, 2011, by Erica Verillo. That appeal was based upon the Building Inspector's refusal to enforce a complaint that there was an increase in the shooting activity on the property, both in the frequency of the firing and the sound level, which included explosions. The Inspector concluded that non-commercial, recreational use did not violate the Zoning Bylaw.

Following a public hearing during which many nearby residents testified that there was a dramatic increase in the frequency and intensity of noise from the property, the Board found that one of the property owners was in the business of assembling and selling

automatic weapons, and training persons in their use. His business website indicated that the company had the use of a parcel in western Massachusetts for those purposes.

The appeal was granted and the Board's written decision, annexed hereto, directed the Building Inspector to issue a cease and desist order directed to the owners of 74 Village Hill Road mandating:

1. The shooting must return to the pre-2003 patters of usage (prior to the enactment of the Zoning Bylaw).

2. Use of automatic weapons shall return to pre-2003 levels.

3. No organized shooting groups will have access to the property.

4. Testing of firearms and instructing or training in the use of automatic weapons is prohibited.

5. Commercial activity, and activity related to commercial interests, such as weapon dealers, is prohibited.


b. This Appeal:

In the instant matter, the Building Inspector received numerous complaints regarding increased shooting on the subject property from nearby residents. The complaints allege automatic weapon fire as well as explosions. Residents state that this activity occurs nearly every day and lasts for several hours, denying them enjoyment of their own homes and creating a dangerous condition. It was alleged that the Building Inspector has not enforced section 4 of the Zoning Bylaw, as there exists a danger to public safety. People use this property for recreation and travel alongside the shooting area on a dirt road unaware that shooting may be occurring. In a letter to Keith Harmon Snow dated July 15, 2015, the Building Inspector stated that he visited the property at least 10 times to investigate complaints that the 2011 decision had been violated. He spoke to one of the owners as well as the police chief and long-time neighbors. The Building Inspector concluded "the level of activity seems to be in keeping with the 2003 levels as required by the Zoning Board." This response is the basis of the current appeal. In responding to this appeal, the Building Inspector commented that the 2011 ruling lacked specificity, making it difficult to enforce. The intermittent nature of alleged violations added to the difficulty of enforcement.


c. The Site Visit:

Tom Hodgkins, the major property owner, accompanied Osa Flory and Gerald Mann on a visit to the site. The main entrance to the site, from Village Hill Road, is marked by the parcel number and a "For Sale" sign. There is no indication that shooting might occur on the site. The area where shooting takes place is several hundred feet from the entrance. Two signs in the immediate vicinity of the shooting area state that permission of the owner is required and that shooting can only take place in the presence of an owner or the police. Mr. Hodgkins acknowledged that there are no warning signs on either of the other two entrances to the parcel. No barrier separates the shooting area from the trail passing through the property.

The property is enrolled in Chapter 61B MGL, which provides a lower tax rate in exchange for permitting public access for recreational purposes. The permitted purposes include hiking and target shooting. A town-owned conservation parcel and hiking trail, known as the Breckenridge trail, is nearby and connects to the Hodgkins parcel.

d. The Hearing:

The hearing was continued from the original date due to the request of attorney Jesse Adams, representing the landowners. However, Mr. Adams did not appear at the hearing nor did he notify the Board of his intention not to appear. Two attorneys

representing nearby residents did appear: Alan Seewald for Henrietta Wallace and Charles J. DiMare for the appellants. The hearing was well attended and did not conclude until everyone who asked to speak was permitted to address the Board.

Louis Hasbrouck, the Building Inspector, stated that he has received 247 complaints since the 2011 decision, many from the same people. He states that he has investigated each complaint, visiting the premises on numerous occasions, and has not encountered any shooters in recent years. There were some violations in early years, which were dealt with. There was conflicting testimony regarding the current level of shooting. Two nearby residents stated that there was another nearby source of explosions this summer that may have been wrongly attributed to the subject parcel. Others testified that there has been a significant decrease in shooting since the 2011 decision, and a person who uses the property for dog walking stated it was much cleaner than in the early years. Several longtime residents complained of automatic weapons being fired for extended periods by multiple shooters, in contrast to earlier years when firing at targets generally occurred only on weekends with less intense sounds.

In testimony, owner Tom Hodgkins stated that antique military automatic weapons, dating back to WW2 and the Korean conflict, were fired on rare occasions. He also stated that some persons did call in advance for permission to use the property for shooting, while others did not seek advance approval. He stated that he knew most of those who use the property and has no objections. He also acknowledged that hikers often use the trail.

The attorneys for the applicants submitted a recent decision of the Superior Court, Worcester County, David Brown et al. v. Mark K Leahy, Individually and as Chief of Police of Northborough December 3, 2013, in support of their position that the subject premises is not a shooting range entitled to the protection of MGL 214, which grants some immunity to range owners. That case implies that merely calling property a shooting range does not qualify it for the protection afforded by MGL 214. The court noted that no definition of a range is found in Massachusetts statutes and therefore looked to compliance with safety standards established by the NRA. These standards include a backstop, baffles to ensure rounds do not stray from the intended path, warning signs, and a flag indicating firing is in progress. It is noted that none of these safety precautions were found during the site visit.

**Applicable Law and Decision Criteria:**

Town of Williamsburg Zoning Bylaw Section 4 Restrictions

4.0 No building or structure or parcel, tract or lot of land shall be used for any purposes harmful to public health, safety or comfort by reason of the emission of odors, fumes, dust, gas, chemicals, poisonous fluids or substance, vibration, noise or other cause of danger.

**Decision of the Board:**

As a preliminary matter, the Board reaffirms its 2011 decision, which was not appealed to a court, and is annexed and incorporated herein. The Board understands the Building Inspector's difficulty in interpreting and enforcing that part of the 2011 decision calling for a return to pre-2003 levels of use. We agree that, given the circumstances, he has been diligent in pursuing complaints and attempting to enforce the bylaw and the 2011 decision.

The 2011 decision assumed that the property owners were entitled to the protections of MGL 214.
However, based upon the decision in Brown v. Lahey, we now conclude that the current property and its use do not qualify for those protections and that MGL 214 is inapplicable to this appeal. Specifically, the Board finds that the property is not a range as that term is commonly used and understood in light of the analysis in Brown v. Lahey. The use of this property lacks nearly all the strictures of the use found to be a range in Brown v. Lahey. Furthermore, the sporadic, intermittent use coupled with the lack of these formalities strongly suggests to this Board that the use of the property for shooting is more akin to an occasional, incidental use. In other words, the fact that a property owner uses or allows his or her property to be used for shooting for time to time does not, in the Board's opinion, rise to the level of a grandfathered range subject to the protections of MGL 214.

Notwithstanding the above, MGL 214, if applicable, would only insulate the use of the property as to noise complaints. Here the complaints and alleged violations go far beyond noise. The Zoning Bylaw protects the public safety, safety and comfort as to noise and sources of danger. Accordingly, to give the Zoning Bylaw meaning and substance, this Board finds that uses which are harmful to public safety and comfort by reason of either noise or danger are prohibited.

Furthermore, the Board may consider the permissibility of extensions and changes of nonconforming uses. The Board finds that the current use of the property for shooting differs in frequency of use and intensity of sounds than the pre-2003 use. Although there have been no injuries reported from the shooting to date, we believe that a potential danger to the public exists and the appellants' appeal of the Building Inspector's failure to address safety issues is granted. We are required by section 4.0 of the Zoning Bylaw to address those dangers.

The Board finds that the owners of 74 Village Hill Road have not exercised control over the use of the property and often do not know who may be using the property for shooting at any given time.

The Zoning Board of Appeals has voted unanimously to grant the appeal of the Building Inspector's failure to enforce the terms of the 2011 decision of the Zoning Board of Appeals and section 4 of the Zoning Bylaw of the Town of Williamsburg. Accordingly and based upon the above findings, the Board finds that violations of the 2011 decision and the Zoning Bylaw exist. The Board, therefore, orders that the owners must undertake and maintain the following remedial action to address noise and safety so that such qualities of its use are not harmful or less harmful and so as to better harmonize its use of the property with the Zoning Bylaw.

**Special Conditions:**

1. Use of the property for shooting shall only take place during daylight hours, but not before 9:00 a.m. and not after 6:00 p.m. Duration of shooting is limited to 4 hours total on any given day.

2. An owner shall be present during any shooting, as defined above.

3. A red flag and visible red sign indicating shooting is currently occurring shall be posted at 100 feet from each end of the shooting area whenever shooters are present.

4. Permanent, highly visible signs indicating that shooting may be taking place shall be posted at each entrance to the parcel.

5. Use of military style weapons, semi-automatic weapons, or assault weapons capable of rapid firing is prohibited unless said weapons were manufactured prior to 1953.

This decision is not effective until recorded at the Registry of Deeds of the County of Hampshire and shall be filed within twenty days after the filing of the notice of this decision in the Office of the Town Clerk.

Appeals from this finding, if any, shall be made pursuant to Chapter 40A, Section 17, of the Massachusetts General Laws.

Respectfully submitted this 9th day of December, 2015.

_Gerald Mann_

Gerald Mann, Acting Chair,
on behalf of the Zoning Board of Appeals

Received and recorded this 9th day of December 2015.

_Brenda Lessard_

Brenda Lessard, Williamsburg Town Clerk

"A TRUE COPY ATTEST"
_Brenda Lessard_
5 pages

Exhibit

C

TOWN OF WILLIAMSBURG

ZONING BOARD OF APPEALS

### DECISION ON REMAND FROM HAMPSHIRE SUPERIOR COURT

The applicants, Keith Harmon Snow, James A. Snow and Dawn L. White (the "Applicants"), owners of property located at 6 Hyde Hill Road and 84 Goshen Road in Williamsburg, MA, appealed the Building Inspector's failure to enforce Section 4.0 of the Williamsburg Zoning Bylaw and his failure to enforce the decision of the Zoning Board of Appeals dated February 7, 2011 ("2011 Decision") concerning property known as 74 Village Hill Road in the Town of Williamsburg owned by Thomas C. Hodgkins, Robert C. Hodgkins III, Merry Hodgkins and Knowlton Hodgkins. On November 19, 2015, the Zoning Board of Appeals ("Board") issued a decision on the Applicants' appeal ("2015 Decision").

The owners of the property known as 74 Village Hill Road (the "Property") appealed the Board's 2015 decision to Hampshire Superior Court pursuant to G.L. c. 40A, §§ 8, 15 and 17. By order dated August 17, 2017, the Court remanded the matter back to the Board for further reconsidering its grant of an appeal of the Williamsburg zoning enforcement officer's response to a request for zoning enforcement related to shooting activity on Plaintiffs' Property. The Court's Order Of Remand further stated that the Board's decision on remand would supersede and replace the original decision.

At a properly noticed public hearing held on October 3, 2017, the Board heard additional testimony and reviewed evidence related to Applicants' appeal and matters to assist in the clarification of the Board's 2015 Decision. The Board closed the public hearing on October 3, 2017 and deliberated at a public meeting held on October 11, 2017. The Board's 2011 Decision was not appealed and therefore remains in effect except to the extent that this Decision on remand alters any conditions contained in the Board's 2011 Decision

**Date of Application:** August 15, 2015
**Date of Original Hearing:** November 5, 2015
**Date of Original Decision:** November 19, 2015

**Date of Remand:** August 17, 2017
**Date of Remand Hearing:** October 3, 2017
**Date of Decision Meeting:** October 27, 2017

<u>Votes by members of the Board:</u>

| | |
|---|---|
| Gerald Mann: | Aye |
| Osa Flory: | Aye |
| Marcianna Caplis: | Aye |

FINDINGS:

Background

As set forth in the 2015 Decision, 74 Village Hill Road is a 100+ acre tract of land located in the Village Residential Zone, extending into the rural zone. The tract is surrounded by residential homes and Town-owned property which is open to the public. The Property has been used for target shooting by the owners and their friends for many years pre-dating the existing Zoning Bylaw. All or much of the Property is registered under G.L. Chapter 61B, which permits the Property to be open to the public for recreational purposes. There is no physical delineation between the portion of the Property where shooting occurs and the remaining portion of the Property. The Property and adjacent Town Property is open to and used by the public for open space, walking paths, trails and similar recreational purposes.

On September 8, 2011 an appeal was filed with the Board from the Building Inspector's refusal to enforce a complaint that there was an increase in the shooting activity on the property; in terms of frequency, the nature of the shooting, and the sound level which included explosions. The Building Inspector concluded that non-commercial recreational use, did not violate the Zoning Bylaw. Following a public hearing, the Board issued its 2011 Decision, granted the appeal and directed the Building Inspector to issue a cease and desist order to the owners of 74 Village Hill Road mandating that: 1) the shooting return to pre-2003 usage, 2) use of automatic weapons shall return to pre-2003 levels, 3) no organized shooting groups will have access to the property, 4) testing of firearms and instructing or training in the use of automatic weapons is prohibited, and 5) commercial activity and activity related to commercial interests, such as weapon dealers is prohibited. The Board's 2011 Decision was not appealed.

Subsequently, in 2015, another appeal was filed with the Board seeking to overturn the Building Inspector's failure to enforce the 2011 Decision and conditions contained therein. In his denial of zoning enforcement, the Building Inspector stated that the Board did not provide an objective way for evaluating pre-2003 levels of shooting on the Property. In their 2015 Decision the Board attempted to clarify the 2011 Decision, specifically the portion of the 2011 Decision that mandated that shooting return to pre-2003 levels. After an appeal of the 2015 Decision by the property owners to the Superior Court, the Court remanded the matter to the Board for further clarification.

The Hearing

The public hearing was opened and closed on October 3, 2017. At a public meeting held on October 11, 2017, the Board deliberated and considered further conditions to be imposed upon this Property. In addition to the testimony summarized below, applicant Keith Harmon Snow submitted a narrative that was reviewed by the Board.

As set forth in the 2011 Decision, at the public hearing to appeal the Building Inspector's decision held on January 31, 2011, there was testimony heard about the perceived increase in the number of days of shooting on the Property (described as occurring 1-2 days per week prior to 2003 but subsequently occurring 5-7 days per week) and the intensity of the shooting (described as "sounds like machine guns", "automatic weapons", "some type of cannon", "explosions".) At the public hearing held on October 3, 2017, the amount of shooting that occurred on the subject property prior to November 2003, was clarified. There was testimony that the shooting on the

property prior to November 2003 occurred only one afternoon per week and occurred on Sundays after Church for several hours and on the July 4th holiday.

In addition, there was testimony at the October 3, 2017 public hearing that prior to November 2003, there was no automatic gun fire on the property and there was no rapid firing of weapons that sounded as if the guns being fired were automatic weapons. In addition, there was testimony that prior to November 2003, there were no explosions emanating from the Property.

There was testimony at the January 31, 2011 hearing that the Property was being used for activity related to commercial interests which was not the case prior to November 2003.

Concerns were raised at the October 3, 2017 public hearing and prior public hearings before the Board about the safety of residents using the property for recreational purposes at the same time that there was shooting on the property. It was also noted at the hearing that the property owners do not reside on the Property, therefore raising concerns as to whether those using the Property for shooting had the permission of the owners and whether the owners had control over the use of the Property so as to ensure public safety to all using the Property.

Testimony at the prior hearing indicated that persons shooting on the property did not always seek permission, nor did the owners know who was using the property.

A property owner and his attorney were present at the hearing but did not offer any suggestions to resolve the issues presented. It was noted that the property owners did not comply with the special condition requiring a warning sign to be posted at the entrance to the property.

## DECISION OF THE BOARD:

The Board votes to grant the appeal of the Building Inspector's failure to enforce the terms of the 2011 decision of the Board and section 4 of the Zoning Bylaw of the Town of Williamsburg. The Board's 2011 and 2015 Decisions remain in effect with the exception of the conditions contained in those prior Decisions, which are modified as noted below. The Board further orders that the owners undertake and maintain the following remedial action to address the noise and safety concerns on the Property, with such conditions replacing those contained in the Board's 2011 and 2015 Decisions:

Special Conditions:

1. Shooting on the property will return to pre-November 2003 patterns of usage and scale which limit the shooting on the Property to the following:

    a.    Shooting may occur only one afternoon per week, on Wednesday, between the hours of 11:00 AM and 4:00 PM.

    b.    Shooting may occur only on Sundays between the hours of 11:00 a.m. – 4:00 p.m.

    c.    Shooting may occur on the property on July 4th.

2. No organized shooting groups of a commercial nature.

3. No automatic weapons or weapons that sound like the rapid fire of automatic weapons. No semi-automatic weapons that have been modified to resemble an automatic weapon

shall be used. Any device which attaches to a firearm designed to increase the rate of discharge or any modification of a firearm intended to increase its rate of discharge is prohibited

4. Magazines with a capacity in excess of 10 rounds shall not be used.

5. No testing or instruction of firearms.

6. No commercial activity is allowed.

7. No use of Tannerite or other forms of explosive targets.

**Due to safety concerns raised by the shooting on property the surrounding area of which is open to and used by citizens for recreational use, the following conditions are imposed:**

8. Individuals shooting on the property must be in the presence of either a property owner or a designee of the property owners who shall have the responsibility of insuring safe use of the property.

9. The name of said designee shall be transmitted to the Chief of Police and the Building Inspector at least 24 hours before shooting takes place. The transmittal may be in electronic form.

10. Post permanent signs at all entrances to the property of potential shooting including entrances from the street and from Town-owned land and entrances to the shooting area from the walking trails. Signs shall be maintained and replaced as wear and tear may require.

11. Post red warning flags and signs within 200 feet of the shooting area to notify the public that they are approaching the area of potential shooting. The posting would be required to be on all four sides of the delineated area of shooting near the points of entry to the shooting area. In addition, red flags shall be posted at these same locations when active shooting is occurring on the Property.

12. Raise the height of the earthen berm backstop behind the shooting target to 20 feet above the range surface.

13. Construct a shed from which those firing guns shoot, or construct a baffle at least 6 feet in height between the shooting area and the path capable of stopping any misdirected bullet.

14. Post sign with safety rules at entrance to shooting area.

This decision is not effective until recorded at the Registry of Deeds of the County of Hampshire and shall be filed within twenty days after the filing of the notice of this decision in the Office of the Town Clerk.

Appeals from this finding, if any, shall be made pursuant to Chapter 40A, Section 17 of the Massachusetts General Laws.

Respectfully submitted this 27th day of October 2017,

Gerald Mann, Acting Chair,
On behalf of the Zoning Board of Appeals


Received and recorded this 27th day of October 2017,

Brenda Lessard, Williamsburg Town Clerk

"A TRUE COPY ATTEST"

Brenda Lessard

5 pages

23

A TRUE COPY
ATTEST
HAMPSHIRE, SS/
*Merry Jelinowski Jr.*
CLERK MAGISTRATE

COMMONWEALTH OF MASSACHUSETTS     15 265

SUPERIOR COURT
C.A. NO. 1580CV00265

THOMAS C. HODGKINS, ROBERT C.
HODGKINS III, MERRY HODGKINS-BIRCH,
and KNOWLTON J. HODGKINS,

      Plaintiffs

v.

BRENDA LESSARD, CHARLES DUDEK,
GERALD MASS, OSA FLORY, and
MARCIANNA CAPLIS, as they constitute the
Members of the Town of Williamsburg Zoning
Board of Appeals,

      Defendants

Exhibit
D

### ORDER OF REMAND

    After consideration and at the request of the Town of Williamsburg Zoning Board of Appeals (the "Board") in this matter, the Board's decision issued on December 9, 2015 that is the subject of this action is remanded to the Board for the purpose of reconsidering its grant of an appeal of the Williamsburg zoning enforcement officer's response to a request for zoning enforcement related to shooting activity on the plaintiffs' property.

    It is hereby Ordered that notwithstanding remand, this Court shall retain jurisdiction of this matter.

    It is further Ordered that the Board shall open a public hearing on the matter within sixty (60) days of this Order.  Said public hearing shall take place in accordance with all applicable provisions of General Laws c. 40A.  A written Remand Decision shall be rendered by the Board within 30 days of the close of the public hearing.  The parties shall notify this Court of the Board's Remand Decision within seven (7) days of the decision.  The Board's Remand Decision shall supersede and replace the original decision.

    It is further Ordered that, if the Board's Remand Decision is satisfactory to plaintiffs, the parties shall forthwith file a Stipulation of Dismissal with prejudice and without costs within thirty (30) days after the Remand Decision is filed with the Town Clerk, and no complaint after remand from the Board's remand decision shall be filed.

    If the Remand Decision is not acceptable to plaintiffs, then a complaint after remand may be filed in this action by Plaintiffs from the Board's Remand Decision as provided for under G.L. c.40A, §17; however, if a separate action is filed under G.L. c.40A, §17, then the instant action shall be dismissed forthwith by the Court.

By the Court,

                      , J.

Carey, J.

Date: 8/17/17

585693v2/WIBG/0021

To: 'keith harmon Snow'
Cc: 'Henrietta Wallace' , 'Bill Wallace' , 'Mark Koczela' , 'Mary Alsentzer'
Subject: RE: Draft version 2

*Hodge*
*Exhibit*
*E*

Keith,

Group is 3 based on your comment earlier on 4. Draft shows "cross out" along with new number. I believe we should leave it to lawyers to include info about info about large caliber. I get your point. However, my gut tells me that by being as specific as your list, we are likely to bring the NRA to the next hearing. No one wants that. Again, I will leave it to Alan and Chuck I think. It's going to be extremely difficult to get the restrictions, specific or not. If lawyers want to include a list, I'm fine with it. I will forward you list as a suggestion.

Sure, re inspector and resolution, but does it make sense to be so specific at this time? Seems that "directing" the Selectmen to share in a specific way only opens up for argument. Let them figure it out knowing that the status quo of Williamsburg/Northampton does NOT work.

My plan is to send these documents to the lawyers about 4 pm today. Henrietta, you OK with that?

**From:** keith harmon snow [mailto:keith.harmon.snow@gmail.com]
**Sent:** Wednesday, September 30, 2015 1:20 PM
**To:** Jack Koczela
**Cc:** Henrietta Wallace; Bill Wallace; Mark Koczela; Mary Alsentzer
**Subject:** Re: Draft version 2

RESOLUTION FOR SELECT BOARD -- excellent. Might you aslo suggest that the Town of Williamsburg return to former arrangement where the Building Inspector / Enforcement officer (last one was Paul Tacy) for Williamsburg is shared between Chesterfield, Williamsburg, Goshen?

FINDINGS:

Large calibers may be UNENFORCEABLE to some degree but we can still Ask for it:

- No black powder weapons may be discharged on the shooting field of the property;
- no handgun calibers larger than .32 ACP (no .45 cal, .40 cal. .357 cal. .44 cal., .7.62 cal, 9mm etc.)
- no rifled bore weapons larger than .22 Long Rifle caliber
- no ten guage or large smooth bore weapons (shotguns)
- no explosive materials, esp. tannerite or similar, allowed at any time

It looks like you have NO GROUPS OF MORE THAN 34 INDIVIDUALS

I would ask that it be limited to 2-3 max if shooting is occurring or going to occur

*Exhibit E p2*

⌐ . Wed, Sep 30, 2015 at 12:50 PM, Jack Koczela <jack@koczela.net> wrote:
Of course, the "Resolution" for the Select board would be AFTER this ZBA hearing and decision. I just drafted it now while we are all on topic. As soon as you, Bill and Keith give the go ahead, I will send both documents to both Alan and Chuck. I'd like to do that as soon as possible. Thanks. Jack

**From:** Henrietta Wallace [mailto:henniewallace@gmail.com]
**Sent:** Wednesday, September 30, 2015 12:24 PM
**To:** Jack Koczela
**Cc:** keith harmon Snow; Bill Wallace; Mark Koczela; Mary Alsentzer
**Subject:** Re: Draft version 2

Mark, you have touched on all the pertinent issues of the 2011 ZBA decision in your findings.

Would presenting the "Resolution" to the Select Board at this time possibly be in conflict with Allan representing Keith at the ZBA. Alan is the zoning expert.

. should pass the Resolution by Alan first and get his take on it.

On Wed, Sep 30, 2015 at 10:53 AM, Jack Koczela <jack@koczela.net> wrote:
Dear Keith, Henrietta, Bill, Mark and Mary,
Attached is version 2 of the "Findings". I have tried to reflect the edits from Mark and Mary, as well as all of Keith's comments. Struggling with the "large caliber" stuff. As Keith says, it's not enforceable, so why pick a fight that we are doomed to lose.
Anyway, I would hope to send the draft "Findings" and the draft "Resolution" off the Alan and Chuck before the end of the day. Need to know if there are any further comments. Thanks. Jack

**From:** keith harmon Snow [mailto:keith.harmon.snow@gmail.com]
**Sent:** Tuesday, September 29, 2015 9:19 PM
**To:** Jack Koczela
**Cc:** Henrietta Wallace; Bill Wallace; Mark Koczela; Mary Alsentzer
**Subject:** Re: Draft

Thank you Jack fro taking a stab at this FINDINGS

My comments below.

DRAFT
Requested Findings and Conclusions

Exhibit E
P3

. .th respect to the matter of shooting at 74 Hyde Hill Road, a matter which is before the Zoning Board of Appeals, and in the spirit of trying to clarify for the Building Inspector and the Board desired outcomes on behalf of the appellant and other adjacent and nearby residents of Williamsburg, we offer the following suggestions for the Board to consider adopting in support of its 2011 decision and reversion to the 2003 status quo, allowing for regular and more consistent enforcement of said statute.

1. Occasional weekend use for the discharge of firearms would be allowed.  For the sake of clarity, "occasional weekend" means only 1 or 2 weekend days (Saturday & Sunday). Thus if shooting occurs on a Saturday, it could occur the following day as well (Sunday). But then the allotment of 2 days would have been used.  No further shooting that month would be allowed. This is to clarify for all, including the Building Inspector, the definition of "occasional weekend use" as was practiced prior to 2003.

   1. As it stands above, neighbors/abutters cannot plan any events at our homes without the possibility of shooting disturbing us. So, what if we request (and Chuck had suggested this to Henrietta and I) that the days be DETERMINED IN ADVANCE and always the same days. Say, on the third Saturday of the month from 9AM -12 PM, or the third Sunday of the Month from say 10 AM to 1 PM but not both days. Chuck also suggested that the ZBA can order that the landowners put up WARNING signs to this effect:
   ### WARNING!
   Shooting may occur on this property from
   2 PM to 5 PM on the 3rd Sunday of the month.

2. No shooting of any kind by any person using any type of firearm should take place at the property on any weekday (Monday through Friday).  This is consistent with pre-2003 practices.

3. No groups of more than 4 individuals, affiliated, related or otherwise, should be shooting at any time.  For sake of clarification and ease of enforcement, this would mean that no more than four persons could be present on the property while firearms are being discharged.  This is consistent with pre-2003 practices where only small groups of 2-3 'ividuals used the land to discharge small caliber firearms.

3. The problem is, one individual at present is enough to disrupt our lives.  Four is already a large group -- thats what we had on 6 June. If they are all shooting shotguns, well, thats

E

P 4

a lot of noise.  And if they shoot any rifle or pistol larger than a .22 who is going to enforce?

4. No large caliber firearms or explosives would be allowed to be discharged on the property.  For clarity, this would mean [ need to complete this ].  This is consistent with pre-2003 practices where it is believed that only .22 caliber and shotguns were discharged.

5. Commercial use of firearms would be prohibited at all times.  For clarification, this would mean that firearm manufacturers, firearm distributors, sales persons, law enforcement officers, or others involved commercially with firearms (except in their capacity as private citizens) would be prohibited from testing equipment and or discharging firearms on the property.  This prohibition is consistent with pre-2003 practices where only recreational shoots discharged weapons on the property.

*********************

4. No large calibers means the following are ABSOLUETLY PROHIBITED:
* All Automatic weapons
  Any handgun caliber larger than .32 cal (unenforceable)
* any rifle larger than ???? .223 cal? (unenforceable)
SIGH!  This is IMPOSSIBLE TO ENFORCE.
The loudest disturbances they make -- the explosions -- are due to .50 caliber, black powder long guns, and the use of tannerite.  However, everything over a .223 is very loud, by increasing degrees, and a .26-06 or .30-06 or .243 or .270 etc etc are all much the same once they start blasting away.  The .223 (5.56mm) or .308 or 7.62 mm are the common assault rifle calibers and these are the ones they are firing hundreds of rounds an hour or ½ hour.  .30-06 is a very very loud discharge.
They are always going to be trying to deceive us and provoke us -- like Duval did with the bird scare cannon.

5. Robert Hodgkins is a gun dealer. The enforcement officer's letter of March 2011 says NO GUN DEALERS -- there is absolutely no difference between Robert Hodgkins as gun dealer and private citizen. The impossibility of getting any reasonable behavior out of Robert Hodgkins is demonstrated by his dealings with the ZBA in Chesterfield NH, and that is why I have included the four Chesterfield NH MINUTES OF ZBA meetings over ... e 6 years in the book I have developed. Robert Hodgkins lies to them and then does exactly what he pleases, and though they catch him, they operate on the basis of good faith and find that once he has done something they have "allowed" it and cannot undo it.

His second instance of lying is established in telling the Building Inspector (Hasbrouck) in November 2010 that there are no commercial operations occurring in MASS -- when we find that the Chesterfield NH ZBA minutes say that ALL TESTING FOR HIS BUSINESS WILL BE DONE IN MASS.

And, this is why I included in the Book that I gave to Chuck and Alan the Facebook page I copied from Hodgkin's or Joe Lococo's page in 2013 where Lococo says "I flipped off your neighbor [Snow] up there yesterday" to which Robert H replies "I am not allowed to shoot there".

That's why it was so quiet in 2012 and 2013.

Robert Hodgkins should not be allowed to shoot here.

E ρ5

On Tue, Sep 29, 2015 at 8:27 PM, keith harmon Snow <keith.harmon.snow@gmail.com> wrote:

Thank you Jack for the recapping and clarifying

On Tue, Sep 29, 2015 at 3:02 PM, Jack Koczela <jack@koczela.net> wrote:

**Attorney Client Privileged**


As per our phone call with Alan and Chuck, attached is a first cut at a "statement of findings and conclusions" for possible use by the lawyers at their discretion and at their timing discretion during the balance of this effort regarding 74 Hyde Hill Road. Your thoughts, edits, additions, etc. are welcome. I have no pride of authorship and don't pretend to think that this is the right form of the document. I hope I captured what was said on the call and got the gist of the content of what Chuck and Alan were looking for.

Also attached, for later use, is a draft resolution considered for use with the Board of Selectmen, at the appropriate time. Again, comments, edits are welcome.

To recap for us clients, here are my highlight notes of the call (HW, BW, KHS, JK, Alan S and Chuck D were on the line). I've used editorial license with these notes. Unless something is in quotes, it is just my scribbling, not the exact words of the speaker(s).


1.  How to respond to request for continuance

    a.  Alan, Chuck and Henrietta commented that they had been involved in continuances before and that it was not only routine but that boards of this sort are careful to exhibit "calendar fairness" to all parties. Likely that one month would be given to the other side. The attorneys both expressed that

they believed the continuance would be granted. Keith noted the Aug 13 date, plus 100 days for Town ZBA to make a decision on the appeal. Keith might be asked to sign an extension to that 100 day limit.

*E P6*

b.  Both attorneys stipulated that from a strategy point of view, they would want Hodgkin's attorney (Jesse) to have to think on his feet, not have 30 days to plan his rebuttal to any arguments we might make.

c.  While it was acknowledge that we expected several folks to come to the hearing to speak on our behalf, having the meeting postponed was an unfortunate risk that we might lose their future attendance, but that the pros of going along with a continuance outweighed the cons. Also, a risk that no continuance would be granted and we'd be there without both attorneys. Again, pros outweigh cons. Keith will notify friendly parties that hearing is LIKELY to be continued; no promises.

d.  Alan will be in the building for another matter on Oct 1, so we have emergency back up.

e.  Agreed that Keith will send email to ZBA (reply all to earlier note from Hodgkin attorney) that we will not object to continuance and will suggest several dates (mutually offered by Alan and Chuck as to dates that coincide with their availability) that our side can meet, **BUT WITHOUT MENTIONING THAT WE HAVE COUNSEL** involved.

f.  Our attorneys stated that they believed any community comments or those from abutters would come AFTER both sides had presented their case.

2.  Goal of this effort is to revert to 2003 uses:  no shooting weekdays, no organized groups shooting, no commercial uses, no large caliber weapons, and only occasional weekend use. Clients agreed to draft up a statement of "Findings and Conclusions" covering these goals and trying to better define them. Jack agreed to make effort at first draft.

3.   All parties, clients and counsel, agreed that LHasbrouck is a problem.  He lives too far away, has a different philosophy about his duties to enforce, has other priorities of his job, etc.  Therefore, at the appropriate time in the future we should undertake an effort to ˌve the Town of Williamsburg retain its own inspector, rather than contracting with Northampton.  Even if LH did enforce Williamsburg rules, he has to travel too far and has too many conflicting priorities to be able to adequately do the job.

*E P7*

4.   All parties agreed that Keith and Henrietta (and Bill) would go together to the hearing for safety sake and to limit possibilities of harassment, etc.  And no speaking unless spoken to.  They would leave the hearing together as well.

Hope this captured it all.  Good call, overall.  Glad the plan is taking shape.

Best,
Jᵒᵒk

--

keith harmon snow
USA: +1.413.626.3800

84 Goshen Road
Williamsburg, MA 01096 USA

A participant at the 65th Annual Conference on World Affairs, Keith Harmon Snow is the 2009 Regent's Lecturer in Law & Society at the University of California Santa Barbara. Some of his reportage, writings, photography and human rights reports can be seen on the web sites: Conscious Being Alliance, All Things Pass & Keith Harmon Snow.

Save a girl's life!
  ˌvw.stopexcision.net

**Subject:** Re: Community meeting to share some important ideas aboutt shooting problem
**From:** keith harmon Snow
**Date:** 7/30/2014 7:37 PM
**To** Charles / Mary Dudek" <cmdudek@yahoo.com>
**CC:** Henrietta Wallace <henniewallace@gmail.com>

*Exhibit F*

Dear Charles & Mary:

Did you forward the invite I sent to anyone?

Someone sent it to Mr. Duval. We don't know who, but we have received an intimidating communication from them which concludes saying they wish to attend the meeting.

blessings
keith


On Wed, Jul 30, 2014 at 7:24 PM, Charles / Mary Dudek <cmdudek@yahoo.com> wrote:

We may be able to get to the meeting, though not sure since we have an afternoon concert to attend. If we don't make it would one of you just let us know what was discussed? We're very interested. (You may want to mention that we can hear the loud shots as well and live on Old Goshen.)

Mary & Charles Dudek

Sent from Yahoo Mail on Android

---

**From:** Henrietta Wallace <henniewallace@gmail.com>;
**To:** keith harmon Snow <keith.harmon.snow@gmail.com>;
**Cc:** Jen Black <jenblack61761@hotmail.com>; Dawn White <dloves2quilt@live.com>; Susan Snow <snows@sps.springfield.ma.us>; jen drumm <jenndrumm3@gmail.com>; Collin Black <collinblack@netzero.net>; Farlin Black <farlinblack@gmail.com>; Paige Bridgens <paigeleh@yahoo.com>; Sharon and Dan Castelli <sharoncastelli@gmail.com>; elaine hyde <hyde01096@yahoo.com>; laurensalva@aol.com <laurensalva@aol.com>; ralmonblack@gmail.com <ralmonblack@gmail.com>; Ruth@koczela.net <ruth@koczela.net>; Jay Snow <jay@mtisystems.com>; Jay Snow <jay.snow.49@gmail.com>; Richard Evans <rme1222@gmail.com>; ssre@crocker.com <ssre@crocker.com>; greyledge1@juno.com <greyledge1@juno.com>; John Munroe <jmunroe475@aol.com>; Charles / Mary Dudek <cmdudek@yahoo.com>; Deborah Villamia <dvillamia@gmail.com>; Mike Connors <conreag@comcast.net>; Chaya Aronson

**Subject:** Re: Community meeting to share some important ideas aboutt shooting problem
**From:** Charles / Mary Dudek
**Date:** 7/30/2014 7:24 PM
**To** enrietta Wallace
**CC:** keith harmon snow <keith.harmon.snow@gmail.com>



We may be able to get to the meeting, though not sure since we have an afternoon concert to attend. If we don't make it would one of you just let us know what was discussed? We're very interested. (You may want to mention that we can hear the loud shots as well and live on Old Goshen.)

Mary & Charles Dudek

Sent from Yahoo Mail on Android

---

**From:** Henrietta Wallace <henniewallace@gmail.com>;
**To:** keith harmon Snow <keith.harmon.snow@gmail.com>;
**Cc:** Jen Black <jenblack61761@hotmail.com>; Dawn White <dloves2quilt@live.com>; Susan Snow <snows@sps.springfield.ma.us>; jen drumm <jenndrumm3@gmail.com>; Collin Black <collinblack@netzero.net>; Farlin Black <farlinblack@gmail.com>; Paige Bridgens <paigeleh@yahoo. cor. , Sharon and Dan Castelli <sharoncastelli@gmail.com>; elaine hyde <hyde01096@yahoo.com>; laurensalva@aol.com <laurensalva@aol.com>; ralmonblack@gmail.com <ralmonblack@gmail.com>; Ruth@koczela.net <ruth@koczela.net>; Jay Snow <jay@mtisystems.com>; Jay Snow <jay. snow.49@gmail.com>; Richard Evans <rme1222@gmail.com>; ssre@crocker.com <ssre@crocker. com>; greyledge1@juno.com <greyledge1@juno.com>; John Munroe <jmunroe475@aol.com>; Charles / Mary Dudek <cmdudek@yahoo.com>; Deborah Villamia <dvillamia@gmail.com>; Mike Connors <conreag@comcast.net>; Chaya Aronson <chaya@purplerosehealingarts.com>;
**Subject:** Re: Community meeting to share some important ideas aboutt shooting problem
**Sent:** Wed, Jul 30, 2014 1:45:07 PM

I will attend the meeting and look forward to learning about our neighbors experiences and opinions.

Best wishes to all,

Henrietta

On Wed, Jul 30, 2014 at 8:39 AM, keith harmon Snow <keith.harmon.snow@gmail.com> wrote:

>     Hi Jen & everyone:

Please note that I have revised the list of addressees to remove several erroneous ones not part of the issue and have added several other neighbors.

I'm happy to facilitate and would welcome anyone else who would like to as well.

I don't think any of us want to "fight" but the Hodgkins refused al attempts to o negotiate or for a peaceful settlement (which in the end was achieved through our efforts) and it seems that Duval is unwilling to listen to any reason. But let's hold the intention for ease and gentleness and cooperation.

See you Sunday.

F P 3

Blessings
Keith


On Wednesday, July 30, 2014, Jen Black <jenblack61761@hotmail.com> wrote:

Dear Keith and Chaya,

Thanks much for organizing this gathering. I plan to be there. Who will facilitate the meeting?

My hope is that we can be creative in working with both Chris and the town toward a peaceful, respectful solution to this problem. I do not wish to engage in a "fight" with anyone; creating winners and losers will ultimately backfire.

I look forward to seeing you on Sunday at 4.

Jennifer

---

Date: Tue, 29 Jul 2014 23:03:03 -0400
Subject: Community meeting to share some important ideas aboutt shooting problem
From: keith.harmon.snow@gmail.com
To: happyvalleyg@hotmail.com; ssmith@productgeneration.com; henniewallace@gmail.com; Dloves2quilt@live.com; Snows@sps.springfield.ma.us; jenndrumm3@gmail.com; collinblack@netzero.net; farlinblack@gmail.com; paigeleh@yahoo.com; sharoncastelli@gmail.com; jenblack61761@hotmail.com; hyde01096@yahoo.com; laurensalva@aol.com; ralmonblack@gmail.com; Ruth@koczela.net; Jay@mtisystems.com; jay.snow.49@gmail.com; rme1222@gmail.com

F P4

Hello

Some of the members of our community would like to hold a small informal meeting to address the problem of the excessive shooting and other forms of harassment coming from 17 Hyde Hill Road in Williamsburg.

Please join us on Sunday August 3 at 4 pm at the home of Chaya and Keith at 84 Goshen Road to share your concerns and learn about strategies that we can implement to attempt to get the Town of Williamsburg to address this problem in our favor (and reduce or eliminate the noise and restore our peace and our property values). We would also like to hear from the closest neighbors about the problems they have encountered and the responses of Town officials.

For example, below you will find several articles outlining how property values elsewhere (not in Williamsburg) declined due to close proximity to shooting ranges and how the town assessors reduced taxes for people in close proximity to the ranges. This information offers a course of action to be taken for those of us whose property and/or quality of life is affected by the shooting at 17 Hyde Hill Road.

One of our neighbors has already put this strategy into action with a formal legal letter to the assessors. On Sunday I will tell you what has been done, and where the issue stands with the Town, and give you a copy of a template letter that you can use for the same purpose: to leverage the issue by making an issue of lost tax revenues for the Town of Williamsburg. If all the neighbors nearby were to do this it would amount to substantial loss of review for the town all because of the EXCESSIVE shooting by one member of the community.

The decline of our property values is a very real and substantial problem! (Especially for anyone who might be planning to sell.)

We will also share some insights about the Williamsburg Police responses to calls, the divisions that appear to exist within the WPD itself on this issue, the newspaper articles and other things. Other members of our community will share about some of their experiences attempting to get the town officials to address this problem.

F p5

Chris Duval has made it clear that he wishes to purchase the property that belonged to my mom, Sondra Thatcher, and it occurs to me that his shooting may be part of a strategy to get property values lower.

It seems that my siblings and I are likely faced with the necessity of selling the property at 6 Hyde Hill Road, and possibly the property at 84 Goshen Road (and me and my partner and child will then move away), for several reasons.  One, of course, Is that we simply do not have the energy to sustain another fight (like the previous fight to bring the Hodgkins range back into reasonable levels of shooting).

However, if we work together as a community we can achieve what individuals struggling alone cannot.

 Our sympathies go out to Henriette Wallace and Jen Black, two of Duvals closest neighbors, and to my great aunt Ruth, who is also quite close, and whose lives are greatly affected by this nuisance.  The shooting is so loud that it has woken up our baby all the way over at our home across Route 9.

Please join us Sunday.

Blessings
Keith & Chaya


**Properties near Noonday gun range see values drop**

*Posted: Jul 11, 2011 11:50 AM EDTUpdated: Jul 11, 2011 11:50 AM EDT*

Karl Artmire, co-owner of the High Noon Shooting Range, takes aim with his .22 caliber


Fwd: please print

**Subject:** Fwd: please print
**From:** Henrietta Wallace
**Date:** 9/6/2015 5:24 PM
**To:** keith harmon Snow <keith.harmon.snow@gmail.com>, Henrietta Wallace
<henniewallace@gmail.com>

*Exhibit*

*G*

## Forwarded conversation
Subject: **Fwd: please print**
------------------------

From: keith harmon Snow <keith.harmon.snow@gmail.com>
Date: Fri, Sep 4, 2015 at 9:30 PM
To: Alan Seewald <alan@paradisecitylaw.com>
Cc: Henrietta Wallace <henniewallace@gmail.com>


critical documents attached

Be warned: one of Hasbrouck's NOTICE OF VIOLATION PACKETS has a huge document
included which details MGLs about guns that you probably dont want to print

Starting with the APPEAL narrative might be a good place to start

keith


--
1. 2011 ZBA decision

2. Chesterfield NH ZBA hearing where Hodgkins states all testing will be done at a facility in
MASS (but he told Hsabrouck all testing was being done in Chesterfield NH) (Note section on
how Hodgkins agrees to shoot into rubber trap to contain the lead, a point of concern for ZBA
about lead contamination)

3. Notice of Violation 8-16-2011

4. Notice of Violation 8-17-2011

5. Cease and Desist Order

6. DEP LOG INQUIRY FORM (has Tom Hodgkins statements to DEP saying, e.g. Machine guns
used only TWICE A YEAR, and this was 2010)

**Subject:** Re: MA gun laws Aug 31, 2015 PB meeting
**From:** Charles / Mary Dudek
**Date:** 9/2/2015 11:35 AM
**To:** Henrietta Wallace

Thanks for sending this!
Charles this going to research if gun noise is distinct from other noise...I would hope not.

Mary

Sent from Yahoo Mail on Android

---

From:"Henrietta Wallace" <henniewallace@gmail.com>
Date:Mon, Aug 31, 2015 at 11:24 PM
Subject:MA gun laws Aug 31, 2015 PB meeting

this is the gun law that Chris was reading:

ttps://malegislature.gov/Laws/GeneralLaws/PartIII/TitleI/Chapter214/Section7b

Section 7B. Notwithstanding the provisions of any general or special law, rule or regulation to the contrary, no owner of a rifle, pistol, silhouette, skeet, trap, blackpowder, or other similar range shall be liable in any civil action or criminal prosecution in any matter relating to noise or noise pollution resulting from use of the range, provided said owner of the range was in compliance with any applicable noise control law, ordinance or by-laws in existence at the time of the construction of such range.

No owner shall be liable in any action for nuisance, and no court shall enjoin the use or operation of said range on the basis of noise or noise pollution, provided said owner was in compliance with any noise control law, ordinance or by-laws in existence at the time of the construction of the range.

The exemptions from liability and the immunities from prosecution provided in this section shall also extend to any owner who, in order to satisfy a requirement of law, regulation or by-law, relocates his range within the same parcel of land or a contiguous parcel of land, owned by him at the time that the commonwealth or its political subdivision commences enforcement of such a requirement or that the owner voluntarily complies with such a requirement. In order to maintain these exemptions from liability and immunities from prosecution, owners who relocate their ranges pursuant to the preceding sentence shall remain in compliance with the applicable noise control laws, ordinances or by-laws in existence at the time of the construction of the original range described in the first paragraph.

**Subject:** Re: MA gun laws Aug 31, 2015 PB meeting
**From:** Henrietta Wallace
**Date:** 9/2/2015 1:32 PM
**To:** "Charles / Mary Dudek" <cmdudek@yahoo.com>

G.84

I just realized that  Chapter 124, sect 7A of the above link deals with damage to the environment including excessive NOISE.

Damage to the environment shall include, but not be limited to, air pollution, water pollution, improper sewage disposal, pesticide pollution, excessive noise,

Maybe that is helpful.

On Wed, Sep 2, 2015 at 11:35 AM, Charles / Mary Dudek <cmdudek@yahoo.com> wrote:

> Thanks for sending this!
> Charles this going to research if gun noise is distinct from other noise...I would hope not.
>
> Mary
>
> Sent from Yahoo Mail on Android
>
> _____
>
> **From:**"Henrietta Wallace" <henniewallace@gmail.com>
> **Date:**Mon, Aug 31, 2015 at 11:24 PM
> **Subject:**MA gun laws Aug 31, 2015 PB meeting
>
> this is the gun law that Chris was reading:
>
> ttps://malegislature.gov/Laws/GeneralLaws/PartIII/TitleI/Chapter214/Section7b
>
> Section 7B. Notwithstanding the provisions of any general or special law, rule or regulation to the contrary, no owner of a rifle, pistol, silhouette, skeet, trap, blackpowder, or other similar range shall be liable in any civil action or criminal prosecution in any matter relating to noise or noise pollution resulting from use of the range, provided said owner of the range was in compliance with any applicable noise control law, ordinance or by-laws in existence at the time of the construction of such range.
>
> No owner shall be liable in any action for nuisance, and no court shall enjoin the use or operation of said range on the basis of noise or noise pollution, provided said owner was in compliance with any noise control law, ordinance or by-laws in