UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS


| | | |
|---|---|---|
| THOMAS C. HODGKINS, ROBERT C. | * | |
| HODGKINS III, MERRY HODGKINS- | * | |
| BIRCH, KNOWLTON J. HODGKINS, | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | |
| | * | Civil Action No. 17-30173-MGM |
| OSA FLORY, MARCIANNA CAPLIS, | * | |
| GERALD MANN, CHARLES DUDEK, AS | * | |
| CONSTITUTE THE MEMBERS OF THE | * | |
| TOWN OF WILLIAMSBURG ZONING | * | |
| BOARD OF APPEALS, AND KEITH | * | |
| HARMON SNOW, JAMES A. SNOW, AND | * | |
| DAWN L. WHITE, | * | |
| | * | |
| Defendants. | * | |


MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTIONS TO DISMISS
(Dkt. No. 7, 9, 16)

March 25, 2019

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Thomas C. Hodgkins, Robert C. Hodgkins III, Merry Hodgkins-Birch, and Knowlton J. Hodgkins (collectively "Plaintiffs") are members of a family that has owned a tract of undeveloped land in Williamsburg, Massachusetts (the "Property") since 1936. At some point, prior to 2003, Plaintiffs or other members of their family conducted shooting activities on a nine-acre portion of

the Property. More recently, the Property has been the subject of zoning enforcement disputes related to a 2003 zoning bylaw and the frequency and intensity of activity at the shooting range. Previously, Plaintiffs appealed a 2015 decision issued by the Zoning Board of Appeals for the Town of Williamsburg ("ZBA") in Massachusetts state court. The state court remanded that decision for reconsideration in August of 2017 (Dkt. No. 1-2, Ex. D), and the ZBA issued its "Decision of Remand from Hampshire Superior Court" on October 27, 2017 ("Remand Decision") (Dkt. No. 1-2, Ex. C). Defendants filed this action in Massachusetts state court against Osa Flory, Marcianna Caplis, Gerald Mass, and Charles Dudek each in their capacity as members of the ZBA[1] (collectively "Town Defendants") and Keith Harmon Snow, James A. Snow, and Dawn L. White (collectively "Individual Defendants") challenging the Remand Decision and alleging various violations of the United States and Massachusetts constitutions. Based on Plaintiffs' inclusion of claims arising under federal law, the Town Defendants removed the case to this court. Following removal, motions to dismiss were filed by James A. Snow and Dawn L. White (Dkt. No. 7), Keith Harmon Snow (Dkt. No. 9), and the Town Defendants (Dkt. No. 16). For the reasons set forth below, the court will dismiss the claims against the Individual Defendants and the claims against the Town Defendants arising under federal law. Following resolution of all the federal claims, this case shall be remanded to state court.

## II.    MOTION TO DISMISS STANDARD

At this stage in the litigation, the court accepts as true Plaintiff's factual allegations contained in the complaint—those setting out who did or said what, to whom, and when—and draws all reasonable inferences based on those factual allegations. *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 36 (1st Cir. 2013). The court may also consider additional facts if they are contained in other documents that are "sufficiently referred to in the complaint" or are "central to plaintiffs'

---

[1] Charles Dudek is not listed as a member of the ZBA on any of the ZBA decisions attached to the complaint. However, as he is named only in his official capacity, the court need not resolve this discrepancy because such claims are treated as brought against the entity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

claim." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *see also Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (*quoting Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)). However, the court must set aside conclusory allegations, those which ascribe legal labels to words and actions rather than facilitate the court's own analysis of the legal sufficiency of the complaint. *Woods v. Wells Fargo Bank, N.A*, 733 F.3d 349, 353 (1st Cir. 2013)).

"As a general proposition, a complaint must contain no more than 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (quoting Fed. R. Civ. P. 8(a)(2)). However, this simple formulation obscures the full weight of the burden that falls on plaintiffs seeking to show that they are entitled to relief. Plaintiff's "short and plain" statement must state the plaintiff's claims and the facts on which they are based clearly enough to allow the defendant to mount a defense. *Díaz-Rivera v. Rivera-Rodríguez*, 377 F.3d 119, 123 (1st Cir. 2004). A defendant may seek dismissal of a complaint on various grounds, including because the plaintiff has failed "to state a claim on which relief can be granted." Fed. R. Civ. P. 12(b)(1), (2), and (6).

### III.   BACKGROUND[2]

The Property consists of 100 acres of undeveloped land straddling the Village Residential Zone and Rural Zone, is surrounded by residential homes, and is designated as permitting public access for recreational purposes in exchange for a lower tax rate pursuant to MASS. GEN. LAWS ch.

---

[2] Consistent with the standard applicable on a motion to dismiss, the court sets forth the factual allegations, and the reasonable inferences that can be drawn therefrom, included in Plaintiffs' Complaint and the documents attached as exhibits thereto (Dkt. No. 1-2). *Watterson*, 987 F.2d at 3.

61B.  Prior to 2003, Plaintiffs and members of Plaintiffs' family had engaged in target shooting on a portion of the Property. In 2003, the Town of Williamsburg enacted a Zoning Bylaws that created zoning districts and a Schedule of Uses which listed acceptable uses and prohibited uses that were not listed. Shooting ranges were not included in the list of acceptable uses. Those bylaws also included, in Section 4.0, a provision prohibiting activities harming the public in a variety of ways, including noise. Section 12 of the Zoning Bylaws provided that "[a]ny lawful use or structure that does not conform to this Bylaw may be continued, but no such non-conforming use or structure shall be changed, extended, or enlarged in any manner, except as provided . . . ." (Dkt. No. 1-2, Ex. A, 2011 ZBA Decision (quoting Zoning Bylaws.))

In 2010, a Williamsburg resident filed a request for enforcement of Section 4.0 with respect to the Property. The Williamsburg Building Inspector issued a decision in which he stated he did not believe the challenged activity violated the bylaws and he, therefore, would not take action. His decision was appealed to the ZBA. A hearing was held in January of 2011, during which "voluminous testimony was heard about the perceived increase in the number of days a week the shooting range was used . . . and the intensity of gun firings" that occurred over the previous four to five years. (*Id.*) Owners of the Property were present at the hearing, but did not ask to provide testimony.

The ZBA issued a decision in February of 2011 finding that use of the Property was non-conforming and that there had been "marked changes in the frequency of use and the increased intensity of shooting sounds issuing from the shooting range" which had "intruded on the ability of the nearby residents to conduct their lives in reasonable tranquility." (*Id.*) Consistent with those findings, the ZBA ordered the Building Inspector to issue a cease-and-desist order to the owners of the Property mandating:

> 1.  The shooting range will return to pre November 2003 patterns of usage and scale.

4

2.  Use of automatic weapons shall return to pre November 2003 levels.
3.  No organized shooting groups will have access to the shooting range.
4.  Use of the shooting range, to test firearms, to instruct or train in the use of automatic weapons is prohibited.
5.  All commercial activity, including activity related to commercial interests, such as gun dealers, is prohibited.

(*Id.*) The decision concluded with information about how to appeal the decision. No appeal was filed.

Several years later, the Individual Defendants filed a complaint with the Building Inspector seeking enforcement of Section 4.0 of the Zoning Bylaws and the 2011 ZBA Decision. When the Building Inspector declined to take action, the Individual Defendants filed an appeal with the ZBA. The ZBA held a public hearing and the three members of the ZBA, defendants Osa Flory, Marcianna Caplis, and Gerald Mann, voted unanimously in favor of a decision issued December 9, 2015 granting the appeal of the Building Inspector's failure to enforce the terms of the 2011 ZBA Decision and Section 4 of the Zoning Bylaws ("2015 ZBA Decision"). (Dkt. No. 1-2, Ex. B, 2015 ZBA Decision.) Plaintiffs contend that some or all of the members of the ZBA had *ex parte* communications with interested parties outside of the public hearing and that these communications were not disclosed publicly but did influence the decision ultimately issued by the ZBA.

In its decision, the ZBA described the 2011 ZBA Decision as based on an assumption that the owners of the Property were entitled to protections for shooting ranges set out in MASS. GEN. LAWS ch. 214, § 7B. (Dkt. No. 1-2, Ex. B.) The ZBA then reached a different conclusion, determining that the protections applicable to shooting ranges likely would not apply to the Property because the area used for shooting did not comply with relevant safety standards for shooting ranges. (*Id.*) Finally, the ZBA imposed five special conditions: (1) limiting shooting to no more than four hours per day, during daylight hours between 9:00 am and 6:00 pm; (2) requiring an owner of the Property to be present during any shooting; (3) requiring the posting of a red flag and visible red sign "100 feet from each end of the shooting area whenever shooters are present;" (4) requiring

installation at each entrance to the parcel of permanent and highly visible signs noticing that

shooting may be taking place; and (5) prohibiting the use of "military style weapons, semi-automatic

weapons, or assault weapons capable of rapid firing" unless the weapon was manufactured prior to

1953. (*Id.*)

Plaintiffs appealed this decision in Massachusetts Superior Court. On August 17, 2017, the

Superior Court granted a request by the ZBA to remand the 2015 ZBA Decision for

reconsideration. (Dkt. No. 1-2, Ex. D, Superior Court Order of Remand.) The Superior Court

retained jurisdiction, but also provided that Plaintiffs could file a separate action if dissatisfied with

the decision on remand and the original action would be dismissed. (*Id.*)

On October 3, 2017 the ZBA held a hearing on remand. After closing the record and

deliberating at an open meeting, the ZBA issued its written decision on October 27, 2017 ("Remand

Decision"). (Dkt. No. 1-2, Ex. C, Remand Decision.) After noting that the 2011 ZBA Decision had

never been appealed, the ZBA described the 2015 ZBA Decision as "attempt[ing] to clarify the 2011

[ZBA] Decision, specifically that portion . . . that mandated that shooting return to pre-2003 levels,"

and described the subsequent remand as intended to provide the ZBA with an opportunity for

"further clarification." (*Id.*) During the hearing the ZBA heard testimony about "the amount of

shooting activity that occurred on the [Property] prior to November 2003." (*Id.*) The testimony

received was that prior to 2003 shooting had occurred at the Property "only one afternoon per week

and occurred on Sundays after Church for several hours and on the July 4th holiday." (*Id.*) There

was also testimony that the Property had not been used for activity related to commercial interests

prior to 2003 but had been used in that manner in 2011. (*Id.*) Finally, there was testimony about

safety concerns related to shooting on the Property, including the continued absence of a warning

sign posted at the entrance to the property and concerns that the owners of the Property did not

know everyone shooting on the Property because not everyone sought permission and the owners

did not reside on the Property. (*Id.*) One of the Property owners attended the hearing with his attorney, but "did not offer any suggestions to resolve the issues presented." (*Id.*)

The Remand decision set out a detailed list of fourteen special conditions, the first of which required "[s]hooting on the property [to] return to pre-November 2003 patterns of usage and scale" and imposed specific limits on when shooting could occur that reflected the ZBA conclusions regarding the usage of the Property prior to 2003. (*Id.*) Plaintiffs were dissatisfied with this decision and filed the instant action.

## IV.    DISCUSSION

Plaintiffs complaint includes eight counts. The basis for the various counts and the specific defendants against whom they are asserted is not always clear. The court, therefore, begins its analysis with a description of its understanding of each count. Counts I and II of the Complaint are appeals of the ZBA's Remand Decision pursuant to Massachusetts law. As neither Charles Dudek nor the Individual Defendants were members of the ZBA, the court understands these counts to have been brought only against Osa Flory, Marcianna Caplis, and Gerald Mann (together the "ZBA Defendants"). As the ZBA Defendants have not moved to dismiss these counts, this court does not consider them further.

A.   Count Three

Plaintiffs have titled Count III "20017 [sic] Remanded Decision is not consistent with shooting rights which vested prior to 2003a [sic]." (Dkt. No. 1-2, Compl. at 12.) Though Plaintiffs have not indicated which Defendants this claim is asserted against, the court understands it to be asserted only against the Town Defendants as the count references actions taken by the ZBA.[3]

---

[3] In Count Three Plaintiffs refer to an "ordinance" and also to the Remand Decision. Although the references to an ordinance could be to the Zoning Ordinance, the court concludes Plaintiffs uses the term to refer to the Remand Decision. This conclusion is based on Plaintiffs' use of the phrase "their ordinance," where the ZBA is the antecedent to their and the absence of specific references to the Zoning Ordinance or its content.

Rather than describe a separate legal claim, Count Three articulates theories for relief in an appeal of the Remand Decision, specifically that the Remand Decision was based on incorrect facts or exceeded the authority of the ZBA. The court, therefore, grants the Town Defendants' Motion to Dismiss as to Count Three as duplicative of Counts One and Two.

B.   Count Four

Count Four is asserted against all defendants and alleges due process violations. Plaintiffs appear to base their claim on the occurrence of *ex parte* contacts between members of the ZBA that allegedly deprived Plaintiffs of their right to a fair hearing. The Due Process Clause imposes "a limitation on the State's power to act," protecting rights to both procedural and substantive due process. *DeShaney v. Winnebago Cnty Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989). As the Individual Defendants are not alleged to have had any position that would have allowed them to act on behalf of a governmental entity, Count Four is dismissed as to each of them. *See Sch. Comm. of Hatfield v. Board of Ed.*, 363 N.E.2d 237, 238 n. 2 (Mass. 1977) (stating that the Due Process Clause of the Fourteenth Amendment and Article 10 of the Declaration of Rights of Massachusetts are "subject to the same analysis").

Dismissal is also warranted as to the Town Defendants. To the extent Plaintiffs seek to vindicate their right to procedural due process, their claim is foreclosed by the *Parratt-Hudson* doctrine. The *Parratt-Hudson* doctrine shields public entities from claims alleging a denial of due process due caused by a misapplication of state law when the state provides adequate post-deprivation remedies. *Hadfield v. McDonough*, 407 F.3d 11, 19-20 (1st Cir. 2005); *see also Sch. Comm. of Hatfield*, 363 N.E.2d 237, 238 n. 2. Here, Plaintiffs allege (1) the members of the ZBA violated the law while reaching their decision and (2) the Remand Decision itself violates the law. Their claims are, thus, foreclosed if Massachusetts provides an adequate process for seeking review of local zoning decisions. As evidenced by Counts One and Two in this case, Massachusetts law provides

for judicial review of decisions issued by a zoning board of appeals. MASS. GEN. LAWS c. 40A, § 17. *See Licari v. Ferruzzi*, 22 F.3d 344, 348 (1st Cir. 1994) (finding Massachusetts process, which concluded with judicial review, provided adequate remedy in case involving enforcement of special permit issued by a municipal planning board). Dismissal is, therefore, appropriate with respect to Plaintiffs' procedural due process claims.

As to a substantive due process claim, the facts alleged by Plaintiffs, that members of the ZBA had undisclosed *ex parte* conversations with individuals opposed to target shooting on the Property, do not meet the required threshold because they are not "so extreme and egregious as to shock the contemporary conscience." *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005). Conduct like that alleged is inappropriate and may even be unlawful; however, "[m]ere violations of state law, even violations resulting from bad faith, do not necessarily amount to unconstitutional deprivations of substantive due process." *Id.* "Conscience-shocking conduct usually entails physical or psychological abuse, or significant interference with a protected relationship, such as the parent-child relationship." *McConkie v. Nichols*, 446 F.3d 258, 261 (1st Cir. 2006). Here, any harm caused by the inappropriate conduct alleged was subject to judicial review in the context of an appeal of one or more of the ZBA decisions. As the allegations in this case do not even approach the level of physical or psychological abuse, dismissal of any substantive due process claim is appropriate.

C.   Count Five

Count Five is titled "Violation of MGL Chapter 214 Section 7B Shooting on a range is not noise pollution or nuisance Massachusetts General Law is Supreme over Town Ordinance." Plaintiffs have not indicated which defendants this claim is asserted against, but the reference to a "Town Ordinance" points towards only the Town Defendants. As with Count Three, Plaintiffs have not articulated a separate legal claim against the Town Defendants in Count Four, but have, instead, articulated another theory supporting their appeal of the Remand Decision – namely that the ZBA's

Remand Decision should be reversed because it was based on a finding that the Property was not a shooting range and that finding was erroneous. The statute cited by Plaintiffs, MASS. GEN. LAWS c. 214, § 7B does not provide a private right of action, merely a defense to a finding of liability related to noise or noise pollution available in civil or criminal actions. *See Anzalone v. Admin. Office of Trial Court*, 932 N.E.2d 774, 781 (Mass. 2010) (finding no private cause of action where "[n]othing in the unambiguous terms of [the statute at issue] indicates a legislative intent" to create a private right of action for violations of the statute). Count Five is, therefore, dismissed as duplicative of Counts One and Two.

D.  Count Six

In Count Six, Plaintiffs assert claims against all defendants for violations of their rights under the First and Second Amendments to the United States Constitution and Articles CVI[4] and XVII of the Massachusetts Declaration of Rights. With respect to the Individual Defendants, this count should be dismissed because the referenced provisions protect against action by the government, not actions by individuals. *See, e.g., U.S. v. Alvarez*, 567 U.S. 709, 716-17 (2012) (describing the First Amendment as protecting against government restrictions on expression); *District of Columbia v. Heller*, 554 U.S. 570 (2008) (defining the Second Amendment as barring the government from taking away individual's rights to possess firearms and referencing the similar scope of Article XVII of the Massachusetts Declaration of Rights).

The ZBA decisions Plaintiffs have alleged violate their rights under the Federal and Massachusetts constitutions impose limits on the recreational discharge of firearms on the Property, which is owned by Plaintiffs and held out as open to the public for recreational purposes in

---

[4] Plaintiffs have asserted a violation of their rights protected by Article I of the Massachusetts Declaration of Rights. However, Article I, which begins "All men are born free and equal," was annulled and replaced by Article CVI, which begins "All people are born free and equal" and includes an expanded list of protections. The court, therefore, references Article CVI, rather than Article I. Like Article I, Article CVI establishes a right to defend one's life, but says nothing about a right to discharge firearms for recreational purposes.

exchange for reduced property taxes. On their face, the ZBA decisions acknowledge that shooting activities occurred on the Property prior to the adoption of the 2003 Zoning and that the ZBA could only impose limits that would restrict the level of shooting activities to pre-ordinance levels.[5] No limits have been placed on Plaintiffs' possession of firearms on the Property.

Given these facts, Plaintiffs have not articulated a plausible theory that the actions taken by the ZBA violated the Second Amendment or Article XVII of the Massachusetts Declaration of Rights, both of which protect the right to possess firearms but not to discharge them for recreational purposes. *See Heller*, 554 U.S. at 631-36 (distinguishing the right to possess firearms for defense guaranteed by the Second Amendment from a right to discharge firearms for other purposes). Plaintiffs have also failed to allege a plausible theory as to how the actions of the ZBA violated any rights enjoyed by Plaintiffs pursuant to Article CVI of the Massachusetts Declaration of Rights or the First Amendment. Dismissal of Count Six as to the Town Defendants is, therefore, appropriate.

E.  Count Seven

Count Seven alleges violations of Massachusetts laws regarding open meetings and conflict of interest. As these laws apply only to government actors, the court understands this count to be asserted only against the Town Defendants. Pursuant to MASS. GEN. LAWS c. 30A, § 23, only the attorney general or a group of "3 or more registered voters" may initiate a civil action to enforce the open meeting law. Plaintiffs include only two Massachusetts residents, only one of whom resides in Williamsburg and can register to vote there. Because the Plaintiffs lack standing to assert a claim pursuant to the open meeting law, that claim is dismissed. *See Melville v. Town of Adams*, 9 F. Supp.3d

---

[5] Plaintiffs have alleged the ZBA's assessment of the historic shooting activity was flawed and can pursue such arguments in the context of an appeal of the Remand Decision.

77, 98-99 (D. Mass. 2014) (dismissing a claim asserted under the Massachusetts open meeting law

based on lack of standing for fewer than three registered voters).

Plaintiffs have also alleged violations of rules regarding conflicts of interest. Remedies for

such violations are provided in MASS. GEN. LAWS c. 268A, § 21 and a prerequisite to such remedies

is a "'finding by the [state ethics] commission pursuant to an adjudicatory proceeding'" that there

has been a violation. *Butler v. Benchmark Senior Living*, 102 N.E.3d 1032 n. 3 (Mass. App. Ct. 2018)

(alteration in original) (quoting Mass. Gen. Laws c. 268, § 21(a)) (table decision). As Plaintiffs have

"not alleged that the jurisdictional prerequisites . . . have been satisfied," dismissal is appropriate as

to this claim. *Id.* at 1032.

F.   Count Eight

Finally, in Count Eight, Plaintiffs assert that the Individual Defendants and Charles Dudak,

one of the Town Defendants, participated in a civil or criminal conspiracy by acting in unison to

influence the decisions of town bodies, including the ZBA, in order to curtail shooting activity on

the Property. Plaintiffs have not identified a legal basis for these claims, but since they reference

Massachusetts law in their opposition to the Motions to Dismiss, the court understands them to be

asserting claims pursuant to Massachusetts law. As Plaintiffs themselves inform the court,

Massachusetts does not allow private prosecutions, foreclosing Plaintiffs claims for criminal

conspiracy. *See Com. v. Williams*, 56 Mass. 582 (1849). In Massachusetts, civil conspiracy may take the

form of "concerted action, whereby liability is imposed on one individual for the tort of another."

*Thomas v. Harrington*, 909 F.3d 483, 490 (1st Cir. 2018) (internal quotations omitted). Tortious action

by one actor is a necessary prerequisite to liability under this theory. *Id.* Dismissal is appropriate as to

this theory of liability because Plaintiffs complaint does not allege an underlying tort.

Massachusetts also recognizes "a 'very limited cause of action . . .' for 'civil conspiracy' of a

coercive type." *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1563 (1st Cir. 1994) (quoting

*Jurgens v. Abraham*, 616 F.Supp. 1381, 1386 (D. Mass. 1985)). Such a claim requires "that defendants, acting in unison, had 'some peculiar power of coercion' over plaintiff that they would not have had if acting independently." *Jurgens v. Abraham*, 616 F. Supp. 1381, 1386 (D. Mass. 1985) (quoting *Fleming v. Dane*, 22 N.E.2d 609, 611 (Mass. 1939)). Plaintiffs have not alleged that the Individual Defendants and Dudek together had power that any one of them alone could not exercise, such as the power exercised when many bankers, employers, or employees all decide to act in concert with one another. *See Fleming*, 304 Mass. at 50. Indeed, Plaintiffs assert that Keith Harmon Snow, alone, drafted language that was ultimately incorporated into the ZBA's decision. In the absence of such coercive power on the part of the Individual Defendants and Dudek, dismissal is also appropriate as to this second basis for a civil conspiracy claim.

V.    CONCLUSION

For these reasons, the court ALLOWS Defendants' Motion to Dismiss Counts Three, Four, Five, Six, Seven, and Eight as to all Defendants. (Dkt. Nos. 7, 9, and 16.) The remaining Counts One and Two assert claims against the Town Defendants that arise under Massachusetts law. Having disposed of the only federal claims in the case, the court remands Counts I and II to state court for further proceedings.[6]

It is so Ordered.

/s/ Mark G. Mastroianni<br>MARK G. MASTROIANNI<br>United States District Judge

---

[6] As no claims remain against the Individuals Defendants they shall be dismissed from the case prior to remand.